## John E. Griffin, by Next Friend, v. Chicago & Western Indiana R. R. Co.

1. PROXIMATE CAUSE—*Of an Accident, Defined.*—The proximate cause of an accident is that from which, in conformity to well-known laws, the accident naturally resulted. The injury must proceed in an ordinary, natural sequence from the negligence complained of.

2. RAILROADS—*Duty to Mere Trespassers.*—A railroad company owes no duty to mere trespassers save to refrain from wantonly or willfully injuring them.

**Trespass on the Case.**—Personal injury. Error to the Superior Court of Cook County; the Hon. MARCUS KAVANAUGH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1901. Affirmed. Opinion filed March 18, 1902.

In this case it appeared that the plaintiff and a number of other boys, living in the vicinity of Fifty-fourth and Wallace streets, in Chicago, Saturday afternoon, July 24, 1897, after witnessing a game of base ball, sat for a time on the sidewalk on Wallace street near to Fifty-fourth street, and just west of defendant's and a large number of other railroad tracks. Joseph La Pointe, a witness for the plaintiff, describes as follows that which afterward took place:

" There was about eight of us on the sidewalk. We were

right about south of the street on the sidewalk—Fifty-fourth street. Jergins went over first. He was taller than I was and older. He was the biggest boy in the crowd. He went over the tracks to catch a train with us. He went southeast. The train was pulling out of the Erie yards; it was a belt engine. It was moving when Jergins started over. Jergins jumped on. We all went with him; he was in the lead. He called us. John Trues, John Griffin and I went with him. John Trues was second, I was third and John Griffin fourth, I think. Jergins got on the train first. I think I was the second on. I saw John Griffin get on. He was third. He got on at the head end of the car and jumped off, and when he didn't hear his brother call him he jumped on again. He got on further north of me. When he jumped off the switch caught him some way and he fell under. I wasn't on the train when he fell. I didn't see him hurt. I heard him say 'I bumped my knee,' looked around, and he was under the train. The last thing I saw, he was about to get off. He was hanging on the car kind of doubled down. He was under the car at the switch—right north. The switch is north of Fifty-fourth Place. I think it was the second track from the shanty—east from the shanty. I saw him when the car had passed. The last two wheels of the car passed over him."

The plaintiff testified:

"I was nine when I was hurt. The train was coming around through the yard. It was going south. About twenty-three cars in train. Jergins got on. I got on third, jumped off and got on the last car. I did not hear any one call me. I was hanging out on the car. My feet were on the waste box. My hands were on the first handle. The accident happened north of Fifty-fourth Court. The switch hit me and knocked me off and went over my leg and foot. The switch that struck me was north of Fifty-fourth Court, about fifteen feet. I rode about fifty feet before I was hurt. The switch was about two or three feet from the ground. It was one of those low switches. I did not see it before I was hit. My face was toward the car."

The jury, by direction of the court, returned a verdict for the defendant.

JAMES C. McSHANE, attorney for plaintiff in error.

EDGAR A. BANCROFT, attorney for defendant in error.

MR. JUSTICE WATERMAN delivered the opinion of the court.

There is very little dispute as to the facts of this case. The plaintiff may have gone from Wallace street to the railroad yard by way of Fifty-fourth street or stepped on at a place between Fifty-fourth and another street.

While regarding this as immaterial, we are of the opinion that if it were of consequence the evidence is such that the jury might have found that the boys did not go upon the tracks by way of any street.

March 26, 1890, there was created an ordinance of the city of Chicago requiring every railroad corporation to construct on each side of its tracks, and in such place with reference thereto as the mayor and commissioner of public works shall approve or direct, except where public streets shall intersect or cross the same, substantial walls or fences of such material, design, proportion and height, as shall be determined and approved by the mayor and commissioner of public works.

There was no fence along Wallace street opposite the railroad yards. Fifty-fourth street was, at the time of the accident, a public street opening into Wallace street, and so, by the public records of the city, appears to have been since 1873. It does not appear to have been planked, but there were thereon ten houses, facing north, east of the railroad tracks.

The defendant was not only not required to construct a fence across the entrance of Fifty-fourth into Wallace street, but it does not appear that it would have been permitted by the city so to do.

It is manifest that with an open entrance to the yards by way of Fifty-fourth street, a fence along the remainder of Wallace street would not have prevented the plaintiff or other boys from going upon the defendant's tracks, or jumping on and off—"flipping"—its moving trains.

The evidence in the court below did not tend to show that the construction of such a fence as was required by the ordinance and ordered by the board of public works would have prevented the accident, and therefore did not

show that the injury to the plaintiff was due to the defendant's negligence.

The plaintiff, in climbing upon the defendant's cars, did an unlawful thing (section 17 of act in relation to fencing and operating railroads, approved March 31, 1874); unlawful, although under the statute he could not have been punished therefor.

The defendant below owes to mere trespassers no duty save to refrain from wantonly or willfully injuring them. Barney, by Next Friend, v. The Hannibal and St. Joseph Railway Co., 126 Mo. 372; Moore et ux. v. Pennsylvania Ry. Co., 99 Pa. St. 301; Cooper, Adm'r, v. Overton, 45 L. R. A. 591; Newcomb v. B. P. Dept., 146 Mass. 596.

The plaintiff was then nine and a half years old, and at the least a boy of fair intelligence and discretion. It can hardly be claimed that he did not know that he was doing what he ought not, and was not only forbidden, but dangerous. While neither crime nor misdemeanor can, under the statute, be charged upon a minor under ten years of age, infants are civilly accountable for their torts, and there is no statute prescribing an age at which they are not civilly responsible or can not be trespassers. See Barney v. Railway Company, 126 Mo. 372–383; Cooper v. Overton, 45 L. R. A. 591–597.

The failure to erect a fence along Wallace street was not the proximate cause of the accident. Between this and the injury there intervened the going of the plaintiff upon the railroad tracks; his jumping upon a moving train; jumping off and on again, hanging from the side of the car with his face toward it and letting his foot hang down so that it came in contact with a low switch.

The proximate cause of an accident is that from which, in conformity to well-known laws, the accident naturally resulted. The injury must proceed in an ordinary, natural sequence from the negligence complained of, or a recovery can not be had. Wharton on Negligence, Sec. 97; Cooley on Torts, 73.

The judgment of the Superior Court is affirmed.