## Chicago & Joliet Electric Railway Company v. Michael H. Freeman, Administrator.

### Gen. No. 4,613.

1. FENDERS—*ordinance requiring, upon traction cars, sustained.* An ordinance requiring fenders upon traction cars is reasonable and valid but a provision therein with respect to the position and height of such fenders, if impracticable, is void.

2. ORDINANCE—*invalid provision of, does not void.* An ordinance may be sustained in part and held invalid in part.

3. CONTRIBUTORY NEGLIGENCE—*minor cannot be guilty of.* A child of between the age of five and six years cannot be guilty of contributory negligence.

4. SUPREME COURT—*decisions of, binding upon Appellate Court.* The decisions of the Supreme Court of this State are conclusively binding upon the several Appellate Courts thereof.

5. NEGLIGENCE—*when violation of ordinance prima facie evidence*

*of.* A violation of an ordinance adopted for the safety of the public is *prima facie* evidence of negligence.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed March 10, 1906.

E. MEERS, for appellant; E. C. HALL, of counsel.

BARR, BARR & BARR, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

At about 7 o'clock in the evening of the 7th day of May, 1903, Anna Freeman, a child not yet six years of age, was run over and killed on South Chicago street, in the city of Joliet, by one of appellant's cars operated by electric power, while in charge of its servants. This suit was brought by the administrator of the deceased to recover damages on the ground that the death was caused by the negligence of appellant's servants. Appellee recovered a verdict and judgment for $1,800 from which this appeal is prosecuted. The first count of the declaration charges defendant generally with negligence in driving and managing its car and by reason thereof causing the death of plaintiff's · intestate. The second charges that defendant was required by the ordinances of the city of Joliet to provide its cars with fenders and after setting out the ordinance, alleges that the car which caused the injury was not equipped with any fender whatever. It was contended on the trial and is urged here by appellant that the ordinance relating to fenders is entirely void as being impracticable and unreasonable. The ordinance is as follows:

"There shall be placed and maintained on every car used on every street railroad, a fender, which shall be placed not more than two inches from the ground or surface of the street, and shall entirely surround the running gear of the car; such fenders shall be pointed at each end of the car; shall extend as far out as the end of the platform, and shall be so constructed and placed as to afford the best possible

protection to persons with whom such cars might come in contact."

After hearing the evidence offered by appellant to show the unreasonableness of the ordinance, the trial court held that the ordinance was valid except as to the provision re-quiring fenders to be placed not more than two inches from the ground or surface of the street. That provision the court held unreasonable but otherwise sustained the ordinance and allowed it to be read to the jury. We are of opinion the ruling of the court upon this subject was correct and that while the provision with reference to the height of the fender above the surface is void as being impracticable and unreasonable, yet the other parts of the ordinance requiring appellant to provide its cars with fenders is not void and it was the duty of appellant under said ordinance to provide its cars with fenders, so placed as to provide all reasonable protection to persons traveling on the streets, and at the same time not materially interfere with the practical operation of cars. The object of the ordinance was to require fenders to be used for the protection of the public and if the provision relating to the height the fenders were to be placed above the surface was unreasonable in that it could not be carried out without materially interfering with the operation of cars, still it was practicable for appellant to equip its cars with fenders practicable for use by it, and at the same time provide a measure of protection to the public; and we are of opinion that notwithstanding the provision with reference to the height of the fenders may be considered unreasonable, it does not invalidate the whole ordinance, and that under said ordinance it was the duty of appellant to place fenders on its cars. That an ordinance may be void in part and valid in part is sustained by City of Quincy v. Bull, 106 Ill., 337; Harbaugh v. City of Monmouth, 74 Ill., 367; Kettering v. City of Jacksonville, 50 Ill., 39; Imes v. C., B. & Q. R. R. Co., 105 Ill. App., 37, and Brooklyn v. Nassau Electric Ry. Co., 56 N. Y. Supp., 605. This latter case we think is very much in

point.    An ordinance of the city of Brooklyn required the
city railway companies within sixty days after its approval
to equip every car with a fender attached to the front plat-
form, "not more than three inches from the tracks and to
be made and modelled in such manner that it will be im-
possible for any person or persons to pass under the fenders
or the platform of said car or cars, and come in contact with
the wheels of said car."    The ordinance provided a penalty
of $25 for the wilful or negligent failure to comply with
it.    Suit was brought to recover the penalty and it was held
that the portion of the ordinance requiring fenders to be
not more than three inches from the tracks was unreasonable
and void, but that the other portions of the ordinance were
valid.    While the declaration here sets out the ordinance
and charges its violation by appellant, the *gravamen* of the
charge is not that it failed to place fenders on its cars not
more than two inches above the surface, but that it failed
and refused to place any fenders whatever on the car that
caused the injury.

A good portion of appellant's brief and argument is de-
voted to the rule announced in the first instruction given
for appellee.    That instruction told the jury that if they
believed from the evidence Anna Freeman was at the time
of the accident a child between five and six years of age,
she could not be guilty of or charged with negligence.    It
is admitted this instruction states the law as announced in
Chicago City Railroad Co. v. Tuohy, 196 Ill., 410, and I.
C. R. R. Co. v. Jernigan, 198 Ill., 297, but it is argued
that this rule is of ancient origin and ought not be adhered
to in this age of development and enlightenment.    We under-
stand the law of the cases referred to, to be binding upon
us and that we have no power to change or alter the law
as therein stated, nor have we the inclination to do so if
we had the power.    We find no error in any of the rulings
of the court relating to the giving or refusing of instructions.
While contributory negligence is not imputable to a child
under seven years of age, still to charge a party with lia-
bility for causing the death or injury of such a child, it

must be proven that the party causing the injury was guilty of negligence. It is earnestly contended here that the motorneer in charge of appellant's car was not guilty of negligence as shown by the testimony. In the first place we hold appellant was required by the ordinance referred to, to equip its cars with fenders. The proof shows the car which caused the death of plaintiff's intestate had no fenders. The violation of an ordinance adopted for the safety of the public is *prima facie* evidence of negligence. U. S. Brewing Co. v. Stoltenberg, 211 Ill., 531. Appellee's proof tends to show that the car at the time it struck the child was running at the rate of from twelve to fifteen miles per hour and that the gong was not being sounded. One witness thinks the speed was about twenty miles per hour. The proof also shows this was a much frequented street for pedestrians and children, and that a number of them were in the street at the time of the accident. It was an asphalt paved street and doubtless furnished an attractive place for children. Appellee's proof also shows that from the place where the child was struck by the car to the place where it stopped and where the child was taken from under the car was at least 125 feet. One of the appellee's witnesses testified he was on the street and saw the accident, but did not know at the time the child was struck what it was, that it looked like a piece of brown paper whirled from the street by the running car; that he went to the car immediately upon its stopping and heard the motorneer say he did not know what he had run over, whether a cat or a dog. Appellant's proof tended to show that the speed of the car was from eight to ten miles an hour and that the gong was sounding. One of the witnesses testified his attention was first attracted to the car by the loud and swift ringing of the gong. The motorneer testified he was running between eight and nine miles per hour, that before he reached the place where his car struck deceased, he slowed down on account of a boy being near the track and then fed up his car to five points power. He says he saw children playing about Third avenue, which is just

south of the place where he struck deceased, and shut off the power and left the car coast. That the little girl came out in front of the car, that when he saw the danger, she was about twelve feet from him and that he immediately applied the brake and reversed the power. It will thus be seen ‚that the evidence was conflicting, but we think it cannot be said that appellee's testimony did not tend to prove negligence on the part of the motorneer. The distance the car ran and dragged the child after striking her tends to support appellee's claim that the car was running at a considerably higher rate of speed than was claimed by the motorneer. He testified that with his power shut off and the car coasting, he could stop it within about sixty feet, that if running at the rate of fifteen miles an hour he could stop it within 125 feet. The weight of the proof shows he did not stop the car under 125 feet after striking the child. If the testimony of the witness as to the remark made by the motorneer after the car stopped is to be believed, it would tend to show that he did not see the child before striking it. True he denies making any such remark but the weight of the evidence and the credibility of the witnesses were matters for determination by the jury, and we are unable to say that they were not warranted in finding appellant guilty. The judgment therefore is affirmed.

*Affirmed.*

MR. JUSTICE DIBELL, having tried this case in the court below, took no part in its consideration here.