John Heiting, Appellee, v. The Chicago, Rock Island & Pacific Railway Company, Appellant.

### Gen. No. 15,532.

1. NEGLIGENCE—*obligation to fence.* A valid ordinance requiring a railroad company to fence its right of way, *held*, to be applicable as well to the protection of persons as of property.

2. NEGLIGENCE—*effect of violation of ordinance.* The violation of a railroad ordinance enacted for the protection of persons, constitutes negligence.

3. NEGLIGENCE—*how proximate cause determined.* If but one con-

clusion can be drawn from the evidence the question as to the proximate cause of an injury is one of law. Where, however, different conclusions may be drawn from such evidence, the question is one of fact to be submitted to and determined by the jury.

BROWN, J., dissenting.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed June 1, 1911.

M. L. BELL, for appellant; BENJAMIN S. CABLE, of counsel.

JAMES C. MCSHANE, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The appellee was a boy ten years and two months old. He lived with his parents on the corner of Peoria and 96th streets, Chicago, and had lived in that vicinity all his life. On the day of the accident he left home about twelve forty-five o'clock in the afternoon to return to school. With five other boys he went west on 96th street four blocks to the tracks of the appellant, intending to cross the tracks at that point and go south on Vincennes road, a street parallel and adjacent on the west to appellant's right of way. On the right of way were four tracks; the two inside ones were passenger tracks, rock ballasted, on an embankment about four feet above the level of the street; the two outside ones were freight tracks, cinder ballasted, about one and a half or two feet lower than the passenger tracks. A drainage ditch about four feet wide was on each side of the right of way and outside of the ditch was a four or five strand barbed wire fence on posts about ten feet apart. At 95th and 97th streets were planked and regular crossings, but 96th street was not opened across the tracks. At 96th street on the west

side of the tracks two posts were out and the wires spread apart, making an opening to crawl through. On the east side of the tracks at 96th street the wires were out or broken out of two of the spaces between the posts and had been in that condition for more than a year. About the time the boys reached the right of way an engine drawing a long freight train passed slowly south on the west track. The boys hearing the school bell ring went through the east opening in the fence onto the tracks and started to run south to cross ahead of the engine on 97th street and get to school on time. The school building was on Throop and 99th streets,—one block west and three blocks south of the point where they went upon the tracks. None of the boys touched or attempted to get hold of or board the train. The appellee ran south along the west end of the ties of the passenger track next to the passing freight train about twenty feet, when he stumbled and fell, rolled down the incline, and one leg was run over and crushed, necessitating its amputation. The train crew had no knowledge or notice of the boys being on the tracks.

The appellee also introduced in evidence ordinances of the city of Chicago providing that no passenger train should run at a speed of more than ten miles an hour and no freight train faster than six miles an hour, except within certain limits, describing same, where trains might run at a greater speed on complying with certain provisions of the ordinance for the erection of walls, fences, gates, etc., within said limits as the mayor and commissioner of public works should approve or direct. The evidence also tended to show a compliance by the defendant with the directions of the said commissioner in the erection some time previous of said fence at the place of the accident, within the third district, and thereupon and at the time of the accident passenger trains run by said place at the rate of thirty miles an hour and freight trains twelve miles an hour. An ordinance of the city of Chicago was also introduced in evidence providing that no cows, horses, swine, sheep, etc., should be permitted to run at large within certain territory, including the place of the accident. The facts were not in dispute and the

appellant offered no evidence. The jury returned a verdict for the appellee assessing his damages at $7,500, and judgment was entered thereon.

The appellant says: "The only error we desire to urge is the refusal of the court to direct a verdict," and bases its argument on three propositions. First: A railroad company is under no common law duty to fence its tracks against children. Second: The ordinance requiring fences was not intended for the protection of persons. Third: The defect in the fence was not the proximate cause of plaintiff's injuries.

We agree with appellant that as a general proposition a railroad company is under no common law duty to fence its tracks. Whether or not there was a common law duty requiring the erection and maintenance of the fence in question, we do not think is necessary to decide, for the case seems to have been tried upon the count averring negligence in the violation of the said fence ordinance, thereby causing the injury; and appellant says: "The court below held that the plaintiff was entitled to go to the jury on account of the violation of the ordinance." We shall therefore only consider the judgment as based on the count averring negligence under the ordinance, with the view that if it be sustained it must be on this count.

Counsel for appellant do not attack the validity of the ordinance in question, but contend that in this State such an ordinance is intended for the protection of animals and not of persons, and rely on Bischof v. Ill. Sou. Ry. Co., 232 Ill. 446; Byrnes v. Boston & Maine R. R. Co., 181 Mass. 322; and Lake Shore & M. S. R. R. Co. v. Liidtke, 69 Ohio St. 384.

In Bischof v. Illinois Southern Ry. Co. the action was to recover for the death of a child six years old because of a failure to comply with the statute which requires railroad corporations to fence their tracks to prevent cattle, horses and other animals from getting on them. The court said: "The purpose of the statute is to fix a conclusive liability upon a railroad corporation for a failure to erect a fence

sufficient to keep stock off the track and to authorize a recovery for damages resulting from such failure, together with attorney's fees; but we are unable to discover any valid ground upon which it can be said that a requirement to build a fence suitable and sufficient to turn stock imposes the duty to build a fence suitable and sufficient to prevent persons from trespassing on the track, although such persons may be of tender years."

In Byrnes v. Boston & Maine R. R., *supra,* a boy eight years old while crossing defendant's freight yard was struck and injured by a passing train and a recovery was sought on the ground the defendant had not erected and maintained at the place a fence as required by the statute. The court said: "The object of the statute is expressed to be to prevent the entrance of cattle upon the road. We find nothing in the statute or in our cases which requires a railroad corporation to have a fence between its own tracks and its freight yard; and it is clear that it was not bound to have a fence between its yard and the street."

In L. S. & M. S. Ry. v. Liidtke, *supra,* a boy six years old went through a broken fence onto the railway tracks, and in attempting to grab or touch a passing car slipped or fell and was injured. The action was sought to be maintained under the statute requiring a railroad company to construct and maintain "a fence sufficient to turn stock." The court said: "It is therefore clear that the fences and cattle guards are not for the purpose of keeping persons off the railroad, but only stock and domestic animals. This is made clear by both the words and purposes of the statute." It is to be observed that all these cases were brought under a statute providing for the erection and maintenance of fences, etc., for the purpose of keeping cattle, horses and animals, only, off the railroad tracks; and if the case at bar be held to come within said statute, the Bischof case, *supra,* would be controlling.

In the enumeration of the powers conferred upon the city in the City and Village Act, article 5, section 1, clause 26, the city may require railroad companies to construct fences,

etc., to protect animals "in like manner and extent as under the general laws of this State relative to the fencing of railroads." The legislature did not stop here, but seemingly recognizing that necessity might require a broader power for the protection of persons, followed with clause 27, beginning as follows: "To require railroad companies to keep flagmen at railroad crossings of streets, and provide protection against injury to persons and property in the use of such railroads." In reference to this clause 27 the Supreme Court of the United States said in Hayes v. M. C. R. R. Co., 111 U. S. 228-238: "The latter clause of this provision is general and unrestricted. It confers plenary power over railroads within the corporate limits, in order that by such requirements as in its discretion it may prescribe, and as are within the just limits of police regulation, the municipal authority may provide protection against injury to persons and property likely to arise from the use of railroads."

The ordinance in question introduced in evidence is as follows:

"2450. Walls, fences and signals. Every person, firm, company or corporation owning, leasing or operating a steam railroad, within the corporate limits of the city of Chicago, shall, within such time as may be prescribed by the mayor and commissioner of public works, construct, or cause to be constructed, on each side of its tracks, and in such place with reference thereto as the mayor and commissioner of public works shall approve or direct, except where public streets shall intersect or cross the same, substantial walls or fences of such material, design, proportion and height as shall be determined and approved by the mayor and commissioner of public works, and shall erect and maintain gates and signals bells, and other safety appliances, operated from towers, or by other reliable means, satisfactory to the mayor and commissioner of public works, for the purpose of giving due and timely warning of the approach of trains, cars or engines at all such streets and public crossings within the corporate limits of the city, as may be designated by the mayor and commissioner of public works, which gates, bells and other safety appliances shall be of such material, kind,

design and proportion as shall be satisfactory to the mayor and commissioner of public works, and shall be maintained and operated by such device, and by competent attendants in charge thereof during all hours of the day and night; and, whenever two or more lines of railroad tracks shall run upon a common right of way, or parallel to and near each other, along or across any street, alley or public place, the mayor and commissioner of public works shall have the right to provide that gates shall be constructed which shall inclose all or any number of such parallel tracks, which gates, so inclosing such parallel tracks, shall be operated simultaneously as to all such tracks so inclosed. And all persons, firms, companies or corporations owning, operating or leasing any railroad in said City of Chicago shall, also, sufficiently light all portion of their tracks crossing any street, alley, park or public or private way, in such manner and at such places as shall be satisfactory to the mayor and commissioner of public works. And, in the event that any such person, firm, company or corporation owning, leasing or operating any railroad shall fail or neglect to construct such walls and fences and provide for the lighting of their tracks, as herein required, and to erect, maintain and operate such gates, signal bells, or other safety appliances along its or their tracks and at the street crossings thereof, within sixty (60) days from the time of the passage of this ordinance, then the City of Chicago, at its election, may cause the same to be erected, constructed, completed and maintained at the expense of such persons, firm, company or corporation, and such person, firm, company or corporation shall be liable to and pay the City of Chicago the whole cost and expense thereof."

A valid city ordinance within the limits of that city has the same force and effect as a statute. Mason v. City of Shawneetown, 77 Ill. 533; U. S. Brewing Co. v. Stoltenberg, 211 Ill. 531; Commonwealth Elec. Co. v. Rose, 214 Ill. 545; Morse v. Sweenie, 15 Ill. App. 486. The appellant constructed the fence and it was its duty to maintain same so long, at least, as it ran its trains at the greater speed thereby permitted. C. & E. I. R. R. Co. v. Guertin, 115 Ill.

466–470.   In other words, availing itself of the benefits of the ordinance it is now estopped from repudiating its conditions.   Commonwealth Electric Co. v. Rose, *supra*.   If this ordinance be read bearing in mind the power conferred upon the city to require railroad companies to provide protection to persons, and also the ordinance in evidence that prohibited animals running at large, it would seem that its primary purpose was the protection of persons.   In Bischof v. Illinois Southern Ry. Co., *supra*, the court said:  "The natural disposition of courts in such cases would be to broaden the statute as much as possible in view of the fact that the law is more solicitous for the protection of human life than property, and if the language employed by the legislature would permit, it would be assumed that it was not the intention to give protection against injury to animals and deny it to infant children."

A fair construction of this ordinance, with the power granted under the statute to pass the same, is in our opinion that it was primarily, or at least in part, for the protection of persons.

The proof showing without contradiction that the appellant was guilty of a violation of the ordinance, it follows it was thereby guilty of negligence.   C. & E. I. R. R. Co. v. Mochell, 193 Ill. 208–211; U. S. Brewing Co. v. Stoltenberg, 211 id. 531–537; Commonwealth Electric Co. v. Rose, 214 id. 545–560; C. & J. E. Ry. Co. v. Freeman, 125 Ill. App. 318–322; Conrad v. Springfield, Cin. Ry. Co., 145 id. 564–572.

As to the remaining point made by the appellant, that said negligence, the break in the fence, was not the proximate cause of the plaintiff's injuries, the court is unable to agree. The majority of the court hold that it was a question of fact under the evidence for the jury, and there being evidence tending to show the break in the fence was the proximate cause of the injuries, and the jury, under proper instructions, finding the break in the fence was the proximate cause of injuries, and the learned trial judge entering judgment thereon, the majority of the court do not consider that the verdict

should be disturbed. In Pullman Palace Car Co. v. Laack, 143 Ill. 242, the court said: "Whether the negligence of the defendant was the proximate cause of the injury was a question of fact, also, to be determined by the jury, under proper instructions from the court. We held in Fent v. Toledo, Peoria and Warsaw Railroad Co., 59 Ill. 349 (approving Toledo, Peoria and Warsaw Railroad Co. v. Pindar, 53 id. 451), that whether the alleged negligence was the proximate cause of the injury was in each case a question of fact, and expressly repudiating the contrary rule, as laid down in Ryan v. New York Central Railroad Co., 35 N. Y. 314, as in the teeth of almost numberless decisions and as unsupported by reason. In the subsequent case of Toledo, Wabash and Western Railway Co. v. Muthersbaugh, 71 Ill. 572, the same was again held. We said in the Fent case, that so far as the case turned upon the issue of remote or proximate cause, the jury should be instructed that if the loss is a natural consequence of the alleged carelessness, which might have been foreseen by any reasonable person, the defendant is responsible, but is not to be held responsible for injuries which could not have been foreseen or expected as the result of the negligence. This is not to be understood as requiring that the particular result might have been foreseen, for if the consequences follow in unbroken sequence from the wrong to the injury, without an intervening efficient cause, it is sufficient if, at the time of the negligence, the wrongdoer might, by the exercise of ordinary care, have foreseen that some injury might result from his negligence." Citing many authorities.

In Landgraf v. Kuh, 188 Ill. 484, a recovery was sought on the ground that the defendant failed to provide a fire escape. The court said, p. 500: "It is often difficult to determine whether the cause of an injury is the remote or the proximate cause thereof. Where, in the absence of a fire escape, a person in a burning building is destroyed by the flames, it is unquestionably true that the fire is the proximate cause of the death, but yet it cannot be said that the absence of the fire escape is not, in the view of the law, a

proximate cause, if the presence of such fire escape would
have prevented the death.   So, if a person in a burning
building, where there is no fire escape or none accessible,
is forced to seek escape from the building by descent from
a ladder or otherwise, it may be a question whether the de-
fective condition of the ladder, or its unskillful use, is, in
such a case, so far the proximate cause of the accident, as to
make the absence of the fire escape merely a remote cause.
Certainly, the effort to escape in some other mode than by a
fire escape might be directly caused by the absence of such
fire escape.   But we do not wish to be understood as express-
ing any opinion upon the question, whether the obstruction of
the double window communicating with the fire escape, or an
accident in connection with the use of the fireman's ladder,
was the proximate cause of the death of appellant's interstate,
or not.   What we decide is, that the question, what is the
proximate cause of an injury, is ordinarily a question to be
determined by the jury under the instructions of the court."

In I. C. R. R. Co. v. Siler, 229 Ill. 390, the court said,
p. 393:   "What is the proximate cause of an injury is or-
dinarily a question of fact, to be determined by the jury from
a consideration of all the attending circumstances.   Fent v.
Toledo, Peoria and Warsaw Railway Co., 59 Ill. 349; Pull-
man Palace Car Co. v. Laack, 143 id. 242; West Chicago
Street Railroad Co. v. Feldstein, 169 id. 139.   It can only
arise as a question of law or pleading when the facts are not
only undisputed, but are also such that there can be no dif-
ference in the judgment of reasonable men, as to the in-
ferences to be drawn from them."

In Ford v. Hine Bros. Co., 237 Ill. 463, the court on
p. 468 quoted from I. C. R. R. Co. v. Siler as follows: "In
order to make a negligent act the proximate cause of an in-
jury it is not necessary that the particular injury, and the
particular manner of its occurrence, could reasonably have
been foreseen.   City of Dixon v. Scott, 181 Ill. 116.   If the
consequences follow in unbroken sequence from the wrong to
the injury without an intervening efficient cause, it is suf-
ficient if, at the time of the negligence, the wrongdoer might,

by the exercise of ordinary care, have foreseen that some injury might result from his negligence."

Whether the negligence charged in the declaration is the proximate cause of the injury sustained is a question of fact for the jury, if there is any evidence tending to establish that fact, but whether there is any such evidence is a question of law.   Seymour v. Union Stock Yards Co., 224 Ill. 579–586.

When but one conclusion can be drawn from the evidence by all reasonable minds, the question is one of law; otherwise it is a question of fact to be submitted to the jury under proper instructions.

The court instructed the jury as follows:

"It is a material part of plaintiff's case to prove that the negligence charged in the declaration was the proximate cause of his injuries.   Even if you believe that the defendant's fence was defective, and that such defect was due to the negligence of the defendant, yet the plaintiff cannot recover unless he further shows by a preponderance of the evidence that the defect in the fence was the proximate cause of his injury.   In order to do this he must show that if the defect had not existed he would not have been injured, and must further show that his injury was a natural and probable consequence of such defect."

This instruction presented the question fairly to the jury. There were only seven instructions given to the jury in the case, and no opportunity to be misled or in any way confused on this question.   The boys started west on 96th street to go to school.   The break in the fence was where the street came up to the appellant's right of way, presenting an excellent opportunity for boys or children to go through and get upon the tracks.   Common experience and observation teach us that children of the age of appellee will very probably avail themselves of such opportunities as there presented to go upon and across tracks, and it would seem that the appellant in the exercise of ordinary care should have foreseen or expected an accident by reason of said conditions.   It is

true the appellee went voluntarily upon the tracks and there fell and was injured. But may not all this be considered the result or consequence of the negligence of the appellant in failing to maintain its fence as directed?

In Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 469, the court said: "The question always is, was there an unbroken connection between the wrongful act and the injury—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? * * * The inquiry must, therefore, always be whether there was any intermediate cause, disconnected from the primary fault and self-operating, which produced the injury."

That the defect in the fence was not the proximate cause of appellee's injuries, the appellant cites and relies on Seymour v. Union Stock Yards Co., 224 Ill. 579; Griffin v. Chicago & Western Indiana R. Co., 101 Ill. App. 284, and Lake Shore & M. S. Ry. Co. v. Liidtke, 69 Ohio St. 384. In each of these cases the boy injured, or killed, was touching or attempting to touch or to board, a moving train, which would seem to be an intervening, efficient cause, and distinguishable from the present case. The majority of the court do not by any means hold that the question is clear or free from difficulty, but are of the opinion that the facts constituted, in the language of the United States Supreme Court, *supra,* a "succession of events so linked together as to make a natural whole, and was not a question on which all reasonable minds would agree and was therefore properly submitted to the jury. That it was a question of fact to be submitted to a jury is supported by the following cases: Schmidt v. Mil. & St. P. R. R. Co., 23 Wis. 186; Keyser v. Chicago & G. T. Ry. Co., 56 Mich. 559; Rosse v. St. P. & Duluth Ry. Co., 68 Minn. 216; Mattes v. Great Northern Ry. Co., 95 Minn. 386; Ellington v. Great Northern Ry Co., 104 N. W. Rep. (Minn.) 827; Hayes v. M. C. R. R. Co., 111 U. S. 228. In each of these cases a recovery was sought for in-

juries to, or death of, a child because of negligence in not complying with a statute, or ordinance, requiring tracks to be fenced. The court held in each of the said cases that it was a question of fact to be determined by the jury, whether or not the absence of, or defect in, the fence was the proximate cause of the injury or death. In Hayes v. M. C. R. R., *supra,* the court said: "It is further argued that the direction of the court below was right, because the want of a fence could not reasonably be alleged as the cause of the injury. In the sense of an efficient cause, *causa causans,* this is no doubt strictly true; but that is not the sense in which the law uses the term in this connection. The question is, was it *causa sine qua non;* a cause which, if it had not existed, the injury would not have taken place, an occasional cause? And that is a question of fact, unless the causal connection is evidently not proximate. M. & St. P. R. R. Co. v. Kellogg, 94 U. S., 469. The rule laid down by Willis, J., in Daniel v. Metropolitan R. Co., L. R. 3, C. P. 216, 222, and approved by the Exchequer Chamber, L. R. 3, C. P. 591, and by the House of Lords, L. R. 5, H. L., 45, was this: 'It is necessary for the plaintiff to establish by evidence circumstances from which it may fairly be inferred that there is reasonable probability that the accident resulted from the want of some precaution which the defendants might and ought to have resorted to;' and in the case of Williams v. Great Western R. Co., L. R. 9 Exch., 157, where that rule was applied to a case similar to the present, it was said, p. 162: 'There are many supposable circumstances under which the accident *may* have happened, and which would connect the accident with the neglect. If the child was merely wandering about and he had met with a stile, he would probably have been turned back; and one at least of the objects for which a gate or stile is required is to warn people of what is before them and to make them pause before reaching a dangerous place like a railroad.'

"The evidence of the circumstances showing negligence on the part of the defendant, which may have been the legal cause of the injury to the plaintiff according to the rule es-

tablished in R. R. Co. v. Stout, 17 Wall. 657, and Randall v.
B. & O. R. R. Co., 109 U. S. 478, should have been sub-
mitted to the jury."

It is contended that the fence was not "boy proof," and
even if the fence had been maintained as required, appellee
might have crawled through or climbed over it and been in-
jured. Very true. In such a case of course there would
be no liability on the count charging negligence in the viola-
tion of the ordinance. If the appellant constructed and
maintained a fence as directed and approved by the com-
missioner of public works and the mayor under the ordi-
nance, it performed its duty. It violated the ordinance and
was thereby guilty of negligence. What "might have" hap-
pened had it not been guilty of negligence may be more or
less speculative. It is not a question of what "might have"
taken place; but rather what was the reasonable, probable
and natural consequences of the negligence in question under
all the facts and circumstances in evidence; and was not
that a fair question to be determined by the jury?

The court gave, upon the request of the appellant, the
following instruction:

"The law does not require a railway company to build
a fence upon its right of way so secure as to make it im-
possible for a boy to get upon the tracks, over or under or
through the fence, but the law only requires a railway com-
pany to construct a fence in the City of Chicago of such
character and pattern as shall be prescribed by the Commis-
sioner of Public Works."

In Rosse v. St. P. & Duluth Ry. Co., *supra,* the court said:
"As has been said, in one case a fence may be a very for-
midable obstruction to a child's going upon a railroad com-
pany's right of way, it may prevent his going there entirely;
and, if it would, we do not think we have any right to say
that his protection was not within the purview of the statute.
In view of the kind of fence which the statute permits to be
built, it may be in most cases a question whether the exis-
tence of such a fence would have prevented the child from

straying upon the track, and hence whether the failure of the railway company to build it was the proximate cause of the injury. But that is a matter of proof on the trial."

Counsel for appellant also argue that appellee was a trespasser and the appellant owed him no duty other than not wilfully or wantonly to injure him. The statement of the law is the settled rule of this State; but should it be held under the circumstances that appellee was a trespasser? If recovery were sought on the common law count, or the negligent conduct of the train men, or the negligent operation of the train, the argument would be pertinent and of great force. The recovery here is based upon negligence, in that the appellant violated the ordinance in question, and thereby the appellee was injured. Now if it be found that the violation of the ordinance was the negligence that was the proximate cause of the injury, then it necessarily follows that the appellee was on the tracks because of appellant's negligence. To hold that under such circumstances he was a trespasser and therefore appellant was not liable would be to hold that appellant could take advantage of its own wrong and moreover would, in a great measure, nullify every statute and ordinance of like character. In nearly every case we have examined, similar to the case at bar, where the court found as a fact, or held it was a question of fact to be submitted to the jury, that the negligence in the violation of the ordinance, or statute, was the proximate cause of the injury, the question of trespasser was not even mentioned. In Baltimore & Potomac Ry. v. Cumberland, 176 U. S. 232, the plaintiff was a boy twelve years and four months old employed in lighting lamps in the vicinity of defendant's right of way, and in the performance of his duties crossed the tracks at places other than public crossings, and was injured. Of the questions in the case one was the failure to fence and another whether he was a trespasser. The court refused to hold, under the circumstances, that he was a trespasser, and in a discussion of that point said, in part: "But in the absence of such fence we do not think that the mere crossing of the

418     APPELLATE COURTS OF ILLINOIS.

Nordhaus v. Peter Schoenhofen Brew. Co., 162 Ill. App. 418.

track in the convenient performance of his duties made him a trespasser *per se.*"

The majority of the court, for the reasons given, are of the opinion that the case was properly submitted to the jury, and are not disposed to hold against the verdict of the jury, sustained by the learned trial court, on the question of fact.

The judgment is affirmed.

*Affirmed.*

Mr. JUSTICE BROWN.  I dissent.  My understanding of the law is that while a violation of an ordinance, if it is the proximate cause of an injury, may establish the negligence of a defendant, it is not sufficient proof that such violation *was* the proximate cause of the injury to establish that possibly the accident might not have happened had the ordinance been observed.  Nor can a defendant be held liable for an injury unless his negligence *was* its proximate cause.

In this case I think the evidence clearly shows that the accident was not proximately caused by the break in the defendant's fence.  No other negligence is charged.  It was a most deplorable accident, by which the plaintiff lost his leg, but I do not think the defendant is liable for it.

The case, in my opinion, should have been taken from the jury by a peremptory instruction for the defendant.