572     APPELLATE COURTS OF ILLINOIS.

Gibbons v. Aurora, Elgin & Chicago R. Co., 177 Ill. App. 572.

## Walter J. Gibbons, Administrator, Appellee, v. Aurora Elgin & Chicago Railroad Company, Appellant.

### Gen. No. 16,918.

1. RAILROADS—*injuries at crossings.* In an action for causing death of plaintiff's intestate at a street crossing, the violation of a village speed ordinance by an interurban electric road constitutes negligence.

2. RAILROADS—*contributory negligence.* In an action for causing the death of plaintiff's intestate at a crossing of defendant's road, where the negligence of defendant's motorman in violating a speed ordinance is a proximate cause of the accident, if intestate's negligence was concurrently necessary to produce it, there can be no recovery.

3. EVIDENCE—*presumptions.* In an action for the death of plaintiff's intestate, a hack driver, there is a presumption of law that he knew of a village speed ordinance affecting the speed of trains and cars at the place of the accident.

4. RAILROADS—*contributory negligence.* A driver is not guilty of negligence in attempting to cross the track ahead of an approaching car, if the jury find under the evidence that he could be said to reasonably appear to have time to cross.

5. RAILROADS—*speed ordinance repealed after accident.* In determining whether defendant in a personal injury action is guilty of negligence in violating a village speed ordinance, it is immaterial that the ordinance was repealed subsequent to the accident.

6. ORDINANCES—*where legislature has given power to pass.* A village speed ordinance is not void for unreasonableness where the power to pass it has been specifically conferred by the legislature.

7. ORDINANCES—*construction of provision fixing speed limit.* In a personal injury action, where defendant is charged with negligence in violating a village speed ordinance, a section of the ordinance providing that cars and trains should not be run faster than a certain rate unless there has been compliance with other sections regarding erection of gates and safety appliances, when construed in connection with the following section which provides that the preceding section shall remain in full force until such appliances shall be constructed and in operation, means that the speed limit is imposed on defendant unless it puts up gates and applies for a permit to run faster.

8. DEATH—*where instruction referring to possibility of intoxication is improper.* In an action for the death of plaintiff's intestate, an instruction offered by defendant which referred to a pos-

sible belief on the part of the jury that deceased was at the time of the accident intoxicated, and their proper action in such contingency, is properly refused where there is no evidence tending to show intoxication.

9. RAILROADS—*presumption of negligence where defendant violates speed ordinance.* In an action for death of plaintiff's intestate, where defendant railway company is charged with negligence in violating a speed ordinance, an instruction to the effect that if the jury believe from the preponderance of the evidence that deceased was killed while in the exercise of ordinary care for his own safety and that defendant company was running its car at a greater speed than ten miles an hour, then the law presumes the death to have been caused by the negligence of defendant or its agent, is not reversibly erroneous where in other instructions the jury are instructed that there can be no recovery if deceased's negligence is a concurrent proximate cause.

10. INSTRUCTIONS—*when not reversible error to refuse proper instruction.* It is not reversible error to refuse proper instruction where another instruction which is given contains the essential gist of the instruction refused.

11. RAILROADS—*contributory negligence at crossing.* Where a hackman attempted to cross in front of an electric interurban train at a village crossing, his contributory negligence is for the jury when he drove on the right of way after a freight train on a parallel track had passed, the interurban train was five hundred or six hundred feet away at that time, the distance to be driven was about eighty feet and the electric train was running forty-five to fifty miles per hour, but was limited by ordinance to a speed of ten miles per hour.

BAKER, J., dissenting.

Action in case for death by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. PAUL MCWILLIAMS, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed March 4, 1913. Rehearing denied March 17, 1913.

HOPKINS, PEFFERS & HOPKINS, for appellant.

RICHARD J. COONEY and FRANCIS J. WOOLLEY, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

574     APPELLATE COURTS OF ILLINOIS.

Gibbons v. Aurora, Elgin & Chicago R. Co., 177 Ill. App. 572.

This is an appeal from a judgment of the Superior Court of Cook county for $3,000, rendered on the verdict of a jury in a suit brought against the defendant under the "Campbell Act" of Illinois, for causing the death of the plaintiff's intestate by negligence.

The defendant, who is appellant in this court, contends that the judgment should be reversed,

*First:* Because the plaintiff was shown so clearly by the evidence to have been guilty of contributory negligence that it was the duty of the court to have instructed the jury peremptorily for the defendant, or at the least have granted a new trial on the ground that the verdict was against the weight of the evidence.

*Secondly:* Because instructions which should have been given were refused, and an instruction which was given should have been refused.

*Thirdly:* Because the court erred in admitting in evidence an ordinance of the Village of Bellwood, inasmuch as

a.   The ordinance had been repealed at the time of the accident.

b.   It was a void ordinance, not being within the power of the Board of Trustees to pass.

c.   A proper construction of it does not impose a speed limit in this case as contended by appellee.

The facts of the accident as shown by the evidence are these:

The plaintiff's intestate, Newman, was a hack driver. He was a sober, industrious man, 28 years old, with good eyesight and hearing, who had been driving a cab or hack for at least ten years. He occasionally drove a carriage in a funeral procession to Oak Ridge Cemetery. Oak Ridge Cemetery is reached from Chicago by the road called Madison street running west and after the village of Bellwood, just beyond Maywood, is passed, by a road running south from Madison street for a mile and a half. Although

the general direction of Madison street is practically due west in the village of Bellwood, there is a jog or elbow in it which makes it run for about 300 feet north and south at right angles with its usual course and then turn again to the west. This north and south piece of the road first runs across the right-of-way of the Chicago and Great Western Railway, which is a hundred feet wide, and then across the right-of-way of the Company defendant herein, the Aurora, Elgin & Chicago Railroad Company. This right-of-way lies immediately south of and adjacent to the right-of-way of the Chicago & Great Western Railway and is also a hundred feet wide. The other hundred feet of the jog are made by the length of the road from its turn at the north before reaching the Great Western right-of-way and from the defendant's right-of-way to the turn at the south. The Great Western Railway is an ordinary steam railroad; the Aurora, Elgin and Chicago Railroad is an electric interurban road running between Chicago and Aurora, a distance of about 60 miles, and between Chicago and Elgin, which is about two miles longer. The roads to Elgin and Aurora diverge at Wheaton beyond Bellwood. Each right-of-way had a double track in it at the time of the accident, but these tracks did not occupy the whole right-of-way. Between the south rail of the south track of the Great Western and the north rail of the north track of the Aurora, Elgin and Chicago was a space of 77 feet and 8 inches, and from the south rail of the south track of the Aurora, Elgin and Chicago to the turn to the west in Madison street is 83 feet and 6 inches. There are platforms about eight feet square northwest and southeast of the crossing of the Aurora, Elgin & Chicago tracks and Madison street, which serve as stations and the crossing is a regular stopping place for local but not for express trains, but few people get on and off trains at this crossing, however. The country is very open and the track runs from Madison street east for about 3,500 feet entirely straight and then curves gently to the south. There

is but one house within half a mile radius of the crossing, and that is situated about 400 feet east and 200 feet north of the crossing.

West of the crossing Madison street runs parallel with and adjacent to the railway for about 1,600 feet and then diverges somewhat to the south. The direction of the railroad is the same on both sides of the crossing. Thus the view to a person on Madison street west or at the crossing is unobstructed for a long distance to the east.

April 8, 1908, the plaintiff's intestate, Frederick Newman, had driven his hack in a funeral procession to Oak Ridge. With an empty carriage he was returning from the funeral ahead of any of the other carriages and with but one near him. This was driven by a man named Jensen and was perhaps 200 feet behind Newman's when the latter arrived at the turn or jog and turned north. Thirty feet or so south of the defendant's tracks, Newman, who was sitting on the ordinary driver's seat of a hack, five or six feet above the ground, stopped his horses for a brief time, awaiting the passage over the crossing of a freight train which had been coming east on the Great Western tracks toward the crossing, while Newman and Jensen had been driving their hacks east on Madison street. The train had been moving at about the same rate as the carriages—six or seven miles an hour. When Newman made the turn and stopped, the engine of the freight train was still about 100 feet west of the crossing. The freight train was composed of 17 cars, a caboose and the locomotive. Its length must have been very nearly 700 feet. The engineer of the freight train says he saw Newman on his feet, coming forward, and his horses galloping on the crossing (although he says he doesn't know whether Newman was urging the horses, it is very plain that he was) just as an electric car coming from the east on the defendant's road passed him, was "pretty near on a line with me," he expresses it. This confirms his further testimony that the electric car was at this time, when

Newman was attempting this passage, at least five or six hundred feet away from the crossing. It was, however, going, as is practically conceded, from 45 to 50 miles an hour—something probably over 70 feet in a second—and it would take only eight seconds or so at that rate to reach the crossing; while the horses and carriage at their quickest possible movement would at least take that time to cross the defendant's right-of-way.

There were no witnesses produced by the defendant who saw the accident or who testified to the speed of the car or its distance away when Newman first started to cross the tracks. No witnesses indeed were called by the defendant except the chief engineer of the Company, who testified to a plat, and a photographer, who verified photographs of the locality which were put in evidence.

The witnesses for the plaintiff who saw the accident were Jensen, before mentioned, a passenger on the electric car, a Mr. Abbott, and the engineer of the freight train, Mr. James L. Moore. They vary somewhat in their testimony, especially as to the important matter of the distance of the electric car away when Newman attempted to cross the tracks, but not more so than the spectators of such an exciting catastrophe as happened might be expected to do without any disposition to depart in the least from the truth. Thus Abbott would place the car farther away than Moore even, while Jensen placed it within 300 feet.

But from a careful analysis of the evidence, we think it fair to say that the jury might properly have believed Moore's testimony to have been on the whole the most precise and exact of the statements made. It would appear to us, from the evidence, that as soon as the last car of the freight train passed, Newman started up his horses, hesitated an instant as he reached the tracks and then urged his horses forward to clear the tracks ahead of the approaching

electric car, which was then perhaps five or six hundred feet away and which he saw approaching. He did not succeed, however. The car, approaching at the great speed heretofore indicated, struck the carriage squarely on the side, smashed it and carried the debris five hundred feet on, releasing the horses and causing the death of Newman, who was thrown into the air.

We do not think that the jury can be said to have followed all the instructions of the trial judge in this case, for one of the instructions given at the instance of the defendant is the following:

"If the jury find from the evidence that both the motorman and Mr. Newman, the deceased, supposed that Newman would be able to get across the track without being struck by the car, and that in so doing they both erred in their judgment in respect to the matter, and that the accident was due to such error in judgment on their part, then plaintiff cannot recover and your verdict must be for the defendant."

We think that the evidence clearly tends to show that Newman could and did see the electric car approaching. In consequence, we must suppose that unless he intended to commit suicide, which the presumption is against, he "erred in judgment" and supposed, contrary to the fact, that "he would be able to get across the track without being struck by the car."

But it is equally plain on the other hand, that the motorman "erred in judgment" in supposing that "Newman would be able to get across the tracks without being struck by the car," either by being able to pass in front of the car, or by waiting and passing behind it. To suppose otherwise would be to impute wanton and deliberate malice to the motorman, for the existence of which nobody contends.

We are unaware of any authority for such an instruction, but it cannot be complained of by the defendant, and it had no effect and did no harm. We have mentioned it as suggesting, notwithstanding its inaccuracy, the real questions at issue.

Did the running of the car by "an error of judgment" across this jog in Madison street at the rate of 45 or 50 miles an hour, when Newman was crossing it, constitute negligence? And did Newman's "error of judgment so clearly constitute contributory negligence as to make it a matter of law, which should have resulted in a peremptory instruction, or so clearly as a matter of fact as to show that the motion for a new trial should have been granted after the verdict for the plaintiff?

The answers to these questions depend in our view, much on the existence, validity and effect of the speed ordinance of the village of Bellwood introduced in evidence.

There might something be said in favor of the proposition that even without a speed ordinance, it would be negligent at such a high rate of speed to run without slackening even an express train over this jog in a well traveled road. It might be a factor too in the matter that there were no gates, although the tracks were fenced except at the crossings; and that there were station platforms which might mislead people to suppose that all trains would slacken speed as approaching a stopping place. But we should not be willing to hold that, without more knowledge or notice than is shown here that Newman would attempt the crossing, the motorman of the defendant's car was guilty of negligence in the present case, if it were not for the existence of the ordinance. But in view of that ordinance, if it existed and was valid, there can be no doubt of such guilt. The defendant and its servants were bound to obey the law, and negligence is established by its violation. Heiting v. Chicago, R. I. & P. Ry. Co., 162 Ill. App. 403, and cases therein cited, on page 410; and Heiting v. Chicago, R. I. & P. Ry. Co., 252 Ill. 466, 471.

Not only is this the general law in relation to violations of statutes or ordinances—which are the proximate cause of damage—but there is a special pro-

vision in the Revised Statutes of 1874, re-enacted in an amending Act approved May 22, 1877, undoubtedly designed to apply particularly to "crossing accidents," which provides that:

"Whenever any railroad corporation shall by itself or agents run any train, locomotive engine or car, at a greater rate of speed in or through the incorporated limits of any city, town or village than is permitted by the ordinances of such city, town or village, such corporation shall be liable to the person aggrieved for all damages done the person or property by such train, locomotive engine, or car, *and the same shall be presumed to have been done by the negligence of said corporation or their agents.*"

That the violation of the ordinance, if it existed, constituted negligence, and that it was also a proximate cause of the accident, we think clear. The ordinance of the village of Bellwood in question provided, so far as this electric road was concerned, that it should be unlawful for it to operate or run within the limits of the village of Bellwood a car at any speed greater than ten miles an hour. If the speed had been but ten miles an hour instead of four or five times that, Newman would have had his carriage as well as his horses across the tracks before the car reached Madison street.

Assuming the ordinance to have been valid, it has also, in our opinion, a very marked application to the question concerning the alleged contributory negligence of Newman. This seems to us the crucial point of the cause. The evidence tends very clearly to show that Newman must have seen and probably heard the approaching car from a position back of the turn, and at least must have seen and heard it after making the turn and while waiting for a minute the passage of the freight train on the Great Western tracks. Even though the negligence of the motorman was a proximate cause of the accident, if Newman's own negligence concurrently was necessary to produce it, his administrator cannot recover. Although it was not as

easy for him at a distance of five or six hundred feet to estimate the speed of the approaching car as it was for the trained eye of the locomotive engineer, Moore, as it passed him, yet he must have seen that it was traveling rapidly and had he no reason to suppose that its speed was less than it really proved to be, or that it was slackening its speed and would probably slacken it still more as it approached the crossing, we might find it difficult to resist the conclusion that all reasonable men must hold, despite the presumption against a wish for self-destruction to which he is entitled, that Newman was guilty of negligence in trying to cross ahead of the car. If thus trying to cross was negligence, that it contributed materially and proximately to the accident, goes without saying. But we cannot assume that Newman was ignorant of the ordinance of the Village of Bellwood. The presumption as a matter of law is the other way, and it is no violent presumption of fact that a hack driver having frequent occasion in funeral processions to pass over this road knew of the ordinance affecting the speed of trains and cars at this dangerous grade crossing. If he did know of it, then he knew that at just about the point which the electric car had reached when he attempted to cross the track, it went into effect and might be supposed to regulate the speed of the further approach of the car. We think this a reasonable and sound doctrine and borne out by authority, notwithstanding a careful consideration which we have given to the appellant's argument to the contrary. St. Louis, V. & T. H. R. Co. v. Dunn, 78 Ill. 197; Cleveland, C., C. & St. L. R. Co. v. Baddeley, 150 Ill. 328; Baltimore & O. S. W. R. Co. v. Then, 159 Ill. 535.

We think, on the whole, assuming the existence and validity of an ordinance limiting the rate of speed of this car while in Bellwood to ten miles an hour, it became a fair question for the jury under the evidence whether Newman could be said "to reasonably appear to have time to cross the track" ahead of the car. If he could, he was not guilty of contributory negligence

forbidding recovery. Baltimore & O. S. W. R. Co. v. Keck, 185 Ill. 400-404.

It is contended, however, by the appellant that there was no valid speed ordinance in evidence in this case, and that the admission of the record purporting to be such ordinance was erroneous. Of course such a conclusion would deprive the appellee of the benefit of that presumption as to the negligence of the Company and of that excuse for the unfortunate action of the deceased which the view we have expressed is based on. But we cannot assent to the appellant's propositions concerning the ordinance in question. That it existed of record as the action of the Village Trustees of Bellwood at the time of the accident is conceded, but it is maintained by appellant, firstly, that as since the accident the ordinance has been repealed, the position of the parties in this case must be considered in every respect as though it had never existed. This proposition is entirely untenable. The ordinance gave no "vested right" and the repeal took away no "vested right." Whether either a defendant or a plaintiff in a personal injury case has been guilty of negligence depends on whether he has acted without the care which, under the circumstances, the law, statutory or common, imposed on him as a duty, and the existence of the ordinance at the time of the accident was, in this case, a very material and, in our opinion, a determining factor in the question. Whether the extent or nature of the duty was changed afterward by further legislation, is of no consequence. Secondly, it is maintained by appellee that the ordinance was void because unreasonable. We should be reluctant, by so holding, to overrule the very apparent opinion of the Legislature of Illinois as shown by the history of the legislation by which "speed ordinances" in incorporated cities, towns and villages are authorized and effect given to them.

By an Act approved February 16, 1865, the presumption of negligence and a liability for damages done by

a train or engine was attached to any railroad company which ran faster within such city or village than was permitted by the ordinances of such municipality and no minimum limit was fixed for the speed to be allowed.

When the statutes were revised in 1874, the substance of this Act was re-enacted with additions including a proviso that no such ordinance should limit the rate of speed in any case to less than four miles per hour. By an amendatory Act approved May 22, 1877, the Act was changed in this proviso only,—the proviso being by it made to read "that no such ordinance shall limit the rate of speed in case of passenger trains to less than ten miles per hour, nor in any other case to less than six miles an hour."

The ground for holding an ordinance void on the score of its unreasonableness must be the want of power conferred by the legislature to pass an unreasonable ordinance. The power to pass this ordinance was, if not expressly, by the strongest possible implication, given by the legislature of Illinois.

A third objection made by appellant is that the speed limit never was in force because it is only imposed by section 8 of the ordinance, which reads as follows:

"It shall be unlawful for any person, firm or corporation, its agents, servants or employees to operate or run within the limits of the Village of Bellwood trains, engines or cars at any speed greater than the rates herein named, to-wit: Passenger trains and light or disconnected engines, ten miles per hour, freight trains, eight miles per hour, *unless such person, firm or corporation has complied with the provisions of this ordinance respecting the erection and maintenance of walls, fences, gates and other safety appliances.*"

If, appellant says, there is no evidence that it has so complied, there is no evidence that it has not, for the other sections of the ordinance providing for said appliances only require them of the railroad company, in case the Village Trustees shall declare them neces-

584     APPELLATE COURTS OF ILLINOIS.

Gibbons v. Aurora, Elgin & Chicago R. Co., 177 Ill. App. 572.

sary and direct their construction and notify the railroad company of their resolution, and there is in this case no proof of any such declaration, resolution or notice.

This proposition concerning the ordinance seems less untenable than the ones just discussed, but on full consideration of all the sections of the ordinance introduced in evidence, we cannot accede to it.

Section 9 of the ordinance, immediately following the one before quoted, reads:

*"It is expressly provided that section 8 of this chapter shall remain in full force and effect until the walls, fences, gates and appliances provided for in this ordinance shall be constructed and in operation,* provided, however, that the Board of Trustees shall have the right to allow any person, firm, company or corporation permission to run their trains at a higher rate of speed, but not greater than twenty-five miles per hour for passenger trains and fifteen miles per hour for freight trains, whenever such person, firm, company or corporation shall have constructed and commenced operating the gates as herein required; provided, further, if the Board of Trustees shall be satisfied that such person, firm, company or corporation is proceeding as rapidly as practicable to comply with all the provisions and conditions contained in this article and whenever in their opinion it shall be deemed expedient and proper to grant such permission; provided, however, that any permit granted under the provisions of this Section shall be in writing attested by the Village Clerk and the same shall be subject to revocation at any time the Board of Trustees shall so elect."

We think, after full consideration, that the appellee is justified in his position that the ordinance taken together, although awkwardly expressed, means that the speed limit mentioned in section 8 was imposed on the appellant unless the Council did something more, "or the railroad itself put up gates and applied for a permit to run faster, thus voluntarily complying with the provisions of the ordinance."

Nor do we see any merit in the contention that as Section 3 speaks of the Village Board proceeding by *resolution* for the instalment of gates, while police regulations must, by statute, be by *ordinance,* the whole ordinance is void.

We hold, therefore, that the ordinance was in force and a speed limit of ten miles an hour imposed on the appellant at the time of this accident, and that there was no error in admitting the ordinance in evidence.

The other grounds of reversal urged by the appellant relate to the instructions given and refused and to the alleged impropriety in the argument made by the plaintiff's counsel to the jury. We do not deem the latter point well taken. The damages were not excessive and their amount shows, we think, that the jury could not have been influenced prejudicially to the defendant by the language used by the plaintiff's counsel to which objection was taken and sustained.

The refusal of the instruction offered by the defendant as No. 3 was clearly right. It referred to a possible belief on the part of the jury that the deceased was at the time of the accident intoxicated and their proper action in such contingency. There was no evidence whatever in the record tending to show deceased's intoxication. Such evidence as even remotely bore on it showed that it was impossible that he should have been intoxicated. That the witness Deckler, who had known him for at least fifteen years and who had testified that he was an industrious, sober, steady man, had sometimes seen him drink beer and sometimes a little whiskey—"never two drinks"—was no evidence tending to show intoxication. Nor was the fact that on his return from the funeral he stopped at a roadhouse, where there was a bar, and got his dinner, such evidence. Jensen, who was with him at the roadhouse, testified twice that Newman did not drink anything there, although on cross-examination admitting that he could not say of his own knowledge anything more than that he did not see him drink.

586   APPELLATE COURTS OF ILLINOIS.

Gibbons v. Aurora, Elgin & Chicago R. Co., 177 Ill. App. 572.

Complaint is made also of the refusal of the first instruction offered by the defendant. We think the instruction might well have been given as the most specific one offered on the theory that Newman did not see the approaching car, but in view of the fact that we do not think it practically possible that the jury, under the evidence, should have held that Newman did not see the car, and upon the stronger ground that although not so specific, the given instruction 6 did contain the essential gist of the doctrine contained in the refused instruction by declaring that the law made it Newman's "duty to give that attention to the sights and sounds warning him of approaching trains that men of ordinary caution would give under like circumstances," we cannot say that we deem its refusal reversible error.

The ninth instruction given at the plaintiff's request reads:

"The Court instructs the jury that if they believe from a preponderance of the evidence that the deceased, Frederick Newman, was killed within the corporate limits of the Village of Bellwood by a car of the defendant company while he was in the exercise of ordinary care for his own safety, and that the defendant company was at the time running its said car at a greater rate of speed than ten miles an hour, then the law presumes the death of the said Frederick Newman to have been caused by the negligence of the defendant or its agents."

This instruction, based on the legislative Act heretofore quoted, we do not regard as a perfect or desirable one. The Appellate Court of the Third District expressed its disapprobation of one practically identical in Cleveland, C., C. & St. L. R. Co. v. Dukeman, 130 Ill. App. 105; and this court did the same in Chicago & W. I. R. Co. v. Zerbe, 110 Ill. App. 171, in which cases judgments were reversed because it was given, and the Supreme Court criticised a similar one in Chicago, B. & Q. R. Co. v. Haggerty, 67 Ill. 113, and in Dukeman v. Cleveland, C., C. & St. L. R. Co.,

237 Ill. 104, in both of which cases, however, it refused to consider it reversibly erroneous.

But although we think, as the Supreme Court said in the Haggerty case, that "The instruction is no doubt somewhat open to the objection made that it might be understood by the jury that the presumption * * * was conclusive and not subject to be rebutted," we do not think, on consideration of all the evidence and the other instructions in this case, there can be any more reason for holding this objection fatal to the instruction or to the judgment than existed in the cases cited, in which the Supreme Court refused so to consider it.

There can be no doubt, as we have hereinbefore pointed out, that the death of Newman was caused by "an error of judgment" on the part of two people—that of the motorman, who "judged" either that Newman would clear the tracks before the car, at the rate of speed that it was going would reach the crossing, or that Newman would stop south of the tracks until the car had gone by; and that of Newman himself, who "judged" that the car would not reach him before he crossed, either because he miscalculated the length of time it would take him to get across, or the length of time it would take the car to get to the crossing. The "misjudgments" of both people were necessary to cause the death. But in running the car at the speed he did, the motorman, because of the ordinance, was guilty of negligence as a matter of law, and in this sense the instruction is accurate in saying that the "law presumes the death of the said Frederick Newman to have been caused by the negligence of the defendant or its agents." There could be no question that this negligent speed of the car was a "proximate cause." But if there was another concurrent proximate cause, and that was the negligence of Newman himself, the plaintiff could not recover. If the court had failed so to instruct the jury, the instruction complained of would have been misleading. But it did not so fail. In the instruction itself, it makes the con-

dition that Newman "must have been in the exercise of ordinary care for his own safety," and in one other instruction, given at the request of the plaintiff, and in at least five given at the request of the defendant, the jury were given clearly to understand that Newman must have been in the exercise of ordinary care for his own safety and not negligent, or the plaintiff could not recover.

Nor does the instruction, like the one in Chicago, B. & Q. R. Co. v. Appell, 103 Ill. App. 185, say that the presumption extends to the defendant's being liable.

Assuming the existence and validity of the ordinance, the only real question of fact in the case was whether Newman was guilty of contributory negligence. On this point we do not think the jury were misled by this or any other instruction. It was the question presented to them by the evidence and instructions taken together. They answered it by their verdict in the negative, and we do not think that their answer was so clearly and manifestly wrong or against the weight of the evidence that we should disturb the judgment, which is accordingly affirmed.

*Affirmed.*

MR. JUSTICE BAKER dissents.