# BALTIMORE & POTOMAC RAILROAD COMPANY *v.* CUMBERLAND.

**ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.**

No. 87.  Argued December 19, 1899. — Decided February 5, 1900.

Under a regulation requiring railroad tracks running through the streets of
a city to be fenced, whenever the grade is " approximately even " with
the adjacent surface of the streets, it is proper for the jury to say
whether a track elevated two feet two inches above the surface of the
street, is within the regulation.

Where the declaration averred that there was " no light " upon the engine
to indicate its approach, and the proof was that an insufficient light was
carried, it was held that there was no material variance.

Where the regulation required that " a headlight, or other equivalent reflect-
ing lantern," should be carried upon a train to indicate its approach, it is
for the jury to say whether an ordinary hand-lantern is a substantial
compliance with the regulation.

In determining the existence of contributory negligence, the plaintiff is not
liable for faults which arise from inherent mental or physical defects, or
want of capacity to appreciate what is and what is not negligence.  He
is only responsible for the exercise of such faculties and capacities as he
is endowed with by nature for the avoidance of danger.

While under the circumstances of this case the court might have held the
plaintiff liable for contributory negligence, if he had been a man of
mature age and average intelligence, as he was a boy of twelve years of
age, it was held that the question was properly submitted to the jury.

A person crossing the track of a railroad company in the streets of a city
for the more convenient performance of his duties is not *ipso facto* a tres-
passer.

THIS was an action begun in the Supreme Court of the Dis-
trict of Columbia by the plaintiff Cumberland, suing by his
next friend, against the Baltimore and Potomac Railroad
Company, to recover damages for personal injuries inflicted
upon him by the alleged negligence of the defendant com-
pany.

The undisputed facts were that the plaintiff, who was twelve
years and four months of age at the time of the accident, was
a street lamplighter by occupation, and for more than a year
prior thereto had been engaged, under his father's direction,

in lighting street lamps in the vicinity of the company's tracks on Maryland avenue in the city of Washington.

The accident occurred about dark on the evening of December 10, 1894. The weather was misty, according to some of the witnesses; rainy, foggy and very cold, according to others. The plaintiff, having lighted a lamp on the south side of Maryland avenue, between Thirteenth-and-a-half and Fourteenth streets, started across Maryland avenue and the tracks of the company, for the purpose of lighting a lamp directly opposite on the north side of the street. There was a curve in the tracks at this point, made by a turn in the railroad from Long Bridge into Maryland avenue. There was no crossing for persons or vehicles between Thirteenth-and-a-half and Fourteenth streets, and the street on either side of the right of way was separated therefrom by curbs which projected eight inches above the adjacent roadway. These curbs were about five feet from the outer rails on either side, and the tracks were carried upon ties, elevated about eighteen inches above the level of the curbs and about two feet higher than the surface of the street. The plaintiff, having lighted a lamp on the south side, started across the street; mounted the elevated roadway, in front of a train coming up from Long Bridge with the tender ahead of the engine, and just as he stepped upon the track, was struck by the tender, knocked down and run over. There was a hand signal lantern swung on the advancing end of the tender, and at the time of the accident it appeared to have been burning.

At this part of the avenue there are four or five railway tracks — two main tracks on the north side, used for passenger trains; a third to the south of these two, used for freight trains, which was the one on which the accident occurred; south of that a track diverging eastwardly into the freight station of the Richmond and Danville Railroad Company to the south of the avenue; and still further south, and south even of the gas lamp which the boy had lit, a switch diverging from the east into a private coal yard. About the place of the accident, and thence westward towards Fourteenth street, the tracks begin a curve so as to reach the Long Bridge

at the foot of that street, and to the south, upon the inner side of this curve and about the line of Fourteenth street, there was a switchman's box, which to some slight extent obstructed the view from the east of trains coming to the avenue from the bridge.

As the boy had passed or was passing the Richmond and Danville track, and was approaching the freight track, his attention was directed to a passenger train going out on the northernmost track towards the bridge. When this had passed he proceeded on his way across, and having stepped on the freight track, he was struck, knocked down and injured by the tender attached to an engine drawing the work train, which he states he had not seen, although he testifies that he had looked in that direction, had listened for approaching trains, and had neither seen nor heard any.

The engineer testified that, when he was between Fourteenth street and the place where the accident happened, he saw the form of a person moving at a brisk walk in the direction of the tracks, about fifteen feet away from them and about fifty or sixty feet in front of the train. He could not tell whether it was a man or boy. When in the neighborhood of thirty feet away, he saw he was coming so near the track that he thought probably he was going to walk on it. He then reversed the engine, applied the brake to stop, and the train was brought to a standstill within the distance of eighty or ninety feet.

The fireman testified that when he first saw the boy he was approaching the track at a brisk walk, and was about fifteen or twenty feet from it, making his way north. He appeared to be looking across towards the moving train on the south-bound main track. He was carrying some object (a ladder). He saw him put his foot on the end of the ties, and he (witness) called the engineer's attention by "hollering."

The defence rested chiefly upon the contributory negligence of the plaintiff in crossing the track at this point without sufficient care in looking out for the approach of trains.

The trial resulted in a verdict for the plaintiff in the sum of $8000, upon which judgment was entered. The case was car-

ried by the defendant to the Court of Appeals, and the judgment of the Supreme Court affirmed. 12 D. C. App. 598. Whereupon defendant sued out a writ of error from this court.

*Mr. Frederic D. McKenney* and *Mr. Wayne MacVeagh* for plaintiff in error. *Mr. John Spalding Flannery* was on their brief.

*Mr. A. S. Worthington* for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

Upon the trial the court left it to the jury to say whether the defendant was guilty of negligence in either of four particulars: (1) In failing to protect the tracks by a fence at the point where the accident occurred; (2) in failing to provide a proper light to give warning of the approach of the train; (3) the distance passed over by the train after it struck the plaintiff and before it was brought to a stop, as bearing upon the question of speed; (4) and whether the persons in charge of the engine were keeping a proper lookout. These questions were all left to the jury, and presumptively, at least, determined against the defendant.

1. The regulations of the Commissioners of the District, adopted in pursuance of an act of Congress, approved January 26, 1887, c. 48, 24 Stat. 368, and a joint resolution of February 26, 1892, 27 Stat. 394, require that " whenever the grade of a steam railroad track is approximately even with the adjacent surface, the line of the road shall be securely closed on both sides with a substantial fence," etc. There was no fence upon either side of the track where the accident occurred. The facts were that the track, at the point where the plaintiff was attempting to cross at the time of the accident, was not over two feet two inches higher than the level of the street, and was probably considerably less than that. The argument of the defendant is that, under this state of facts, the court had no right to submit the question to the jury, whether, within the meaning

of the regulations, the grade of the track at this point was "approximately even with the adjacent surface" of the street. There was also some testimony tending to show that it was impracticable to build a fence there consistently with the proper management of the road.

Had the sole design of the fence been to prevent the crossing of vehicles at this point, it would be difficult to say that an elevation of two feet two inches above the surface of the street made the track approximately even with the adjacent surface; but evidently more than this was contemplated by this regulation, which looked to the protection of pedestrians as well as vehicles. The object of the fence is to prevent all crossing of the tracks, and unless the elevation be such as to render it practically impossible to cross, it is a question for the jury whether the track is not approximately even with the surface of the street. An elevation of two feet would afford no serious obstacle to the crossing of foot passengers, and apparently presented no difficulty to the plaintiff, as he had already mounted the track when he was struck by the tender. Had there been a fence upon either side of the track between Thirteenth-and-a-half and Fourteenth streets, the plaintiff would have been obliged to cross the track at one of the street crossings, in order to reach the lamp which he intended to light, and the accident would probably not have occurred. As bearing upon the practicability of a fence at this point, it is pertinent to note that, after the accident occurred, a fence was erected along the north side of the track between these two streets, and still remains there. It was proper to leave, the question of the fence to the jury, and we have no criticism to make of the charge upon that point.

2. It is also insisted that there was a material variance between the declaration and the proof with respect to the light on the advancing end of the tender, and, hence that the sufficiency of such light was improperly submitted to the jury. The regulations of the Commissioners require that "between sunset and sunrise of each day, a headlight, or other equivalent reflecting lantern, to give due warning to persons near or crossing steam railroad tracks of the approach of

trains, locomotives or cars, shall be displayed upon the advancing end of every train of steam railroad cars, and of single steam railroad cars and locomotives not in trains, in the District of Columbia. It shall be unlawful for any person to set in motion, or run, or operate, any train of railroad cars, single railroad cars, or locomotives, without the said display of such lights or lanterns."

The declaration averred that "there was no light upon the rear part of said engine to indicate its approach," and that "by reason of the reckless and grossly careless manner in which the agents of said defendant operated said engine in failing to place any light upon the rear part of said engine," plaintiff was injured. The plaintiff showed that there was no regular headlight on the tender, but that there was a signal lantern hanging on a hook on the rear or advancing end of the tender, and that such light was visible at a considerable distance.

The court left it to the jury to say whether the light was substantially such an one as was required by the regulations, or such as was requisite to give proper warning of the approach of the train.

As the light was clearly not an ordinary headlight, or other equivalent reflecting lantern, shedding a dazzling light which could scarcely fail to be noticed by a person crossing in front of an engine, but an ordinary lantern which might readily be mistaken for a lantern carried by a foot passenger, or even a street lamp or other smaller light, it is impossible to say that there was error in submitting the question of the sufficiency of the light to the jury. The averment of the declaration, that there was no light, is satisfied by proof that there was no such light as was required by law. An insufficient light is, from a legal point of view, no light at all. The distinction between a powerful headlight, such as is ordinarily carried upon locomotives, and an ordinary lantern, is by no means a fanciful or immaterial one; and it would unquestionably have been error to refuse to submit to the jury the question whether the light in question was such as gave sufficient warning to persons of the approach of trains. Although the regulations

of the Commissioners are satisfied not only by a locomotive headlight, but by an equivalent reflecting lantern of sufficient power to give warning that a train of steam cars is approaching, it was at least a question for the jury whether an ordinary lantern which railway employés carry in their hands answered the requirement. It is very clear that the variance between the declaration and the proof was not of a character to mislead the defendant at the trial. *Nash* v. *Towne*, 5 Wall. 689, 700; *Robbins* v. *Chicago*, 4 Wall. 657; *Grayson* v. *Lynch*, 163 U. S. 468, 476.

3. The case turned mainly, however, upon the question of contributory negligence, and upon the refusal of the court to direct a verdict for the defendant upon that ground. The defence of contributory negligence is one which admits, or at least presupposes, negligence on the part of the defendant, and the party in fault thereby seeks to cast upon the plaintiff the consequence of his own failure to observe the precautions which the circumstances of the case demanded. In determining the existence of such negligence, we are not to hold the plaintiff liable for faults which arise from inherent physical or mental defects, or want of capacity to appreciate what is and what is not negligence, but only to hold him to the exercise of such faculties and capacities as he is endowed with by nature for the avoidance of danger. The defendant is primarily liable for his own negligence, and can only escape liability for a non-observance of such precautions as his observation or the experience of others teaches him to be necessary, by proving that the accident would not have occurred if the plaintiff had taken such precautions as his own observation and experience had taught him to be necessary. Hence the plaintiff is liable only for the proper use of his own faculties, and what may be justly held to be contributory negligence in one is not necessarily such in another. There is no hard and fast rule applicable to every one under like circumstances. To an adult, in full possession of his mental and physical powers, one standard may be applied; to a boy, particularly if he be of limited intelligence, another standard; and to an infant not *sui juris* and totally ignorant of danger, still

another.   *Railroad Co.* v. *Gladmon*, 15 Wall. 401; *Railroad Co.* v. *Stout*, 17 Wall. 657; *Union Pacific Railway* v. *McDonald*, 152 U. S. 262, 281.   Indeed in the last case the only contributory negligence with which he is chargeable is that of his parent or custodian who permits him to stroll into a place of danger.

Had the plaintiff in this case been a man of mature age and average intelligence, it would be difficult to escape the conclusion that he was guilty of negligence in crossing this track without taking more careful observations of incoming and outgoing trains.   But he was not.   He was a boy of twelve years, apparently dull for his age, as he had attended school four or five years without having learned to read or write. There was testimony tending to show that he had only the capacity of a child of six or seven.   Certain answers given by him upon his examination indicated that his powers of observation were limited or his memory defective.   He was employed by his father, who was a city lamplighter, to light about thirty lamps upon or near Maryland avenue; had started shortly before five o'clock on the evening in question, which was dark and misty, to make his accustomed rounds, and had just lighted a lamp on the south side of the avenue, when he started across to light a lamp on the north side, almost immediately opposite the one he had just lighted.   He says he looked both ways, up and down Maryland avenue, for trains, waited for the passing of an outgoing passenger train, but failed to notice an incoming train which was being drawn by a locomotive running backward.   The light on the tender was obviously not powerful enough to illuminate the tracks in front of the locomotive, since the engineer and fireman, who were looking at him as he stepped on the track in front of the locomotive, could not tell whether he was a man, woman, boy or girl, and could not see the ladder he carried. It is probable that he was somewhat confused by the noise of the outgoing train, by the ringing of the engine bell, and by a number of vehicles which had just come over the bridge from the Virginia side, and were rumbling and rattling over the cobblestone pavement.   It may be that these noises prevented

his hearing the shouting of the engineer and fireman, and of two men at a switch lower down the track toward the bridge, who were calling to him to keep away. It is by no means improbable that, if there had been a strong reflecting light on the tender, as the regulations required, it would have compelled his attention, when an ordinary signal lantern might easily pass unnoticed. Indeed, a witness who was standing on the corner of Thirteenth-and-a-half street and Maryland avenue, and saw the plaintiff going from the lamp toward the railroad track, saw no train coming up from the bridge, although he was looking in that direction.

We do not think that under these circumstances plaintiff could be considered a trespasser in crossing the tracks. This term is doubtless applicable to those who unnecessarily loiter upon, or walk along, a railway track as a convenient path. But to say that the plaintiff, who was lighting lamps on both sides of Maryland avenue, was bound every time he crossed the track to do so at a street crossing, is to apply too stringent a rule. The lamp which he had lighted and the one which he had started to light were upon opposite sides of the street, at a distance of from 100 to 150 feet from the crossing of Thirteenth-and-a-half street. The rule contended for would require the plaintiff, after having lighted the lamp on the south side, to return to Thirteenth-and-a-half street, cross the avenue at that point, and then go about half a block to a point opposite the other, nearly double the distance required to cross the tracks directly. This method would have to be repeated every time he had occasion to cross the avenue. Of course, if a fence had been built this would have been necessary, but in the absence of such fence we do not think that the mere crossing of the track in the convenient performance of his duties made him a trespasser *per se*. We have examined the many cases cited by the plaintiff in error upon this point, and find that nearly all of them either turned upon the question whether loitering upon, playing upon or walking along a railroad track made a person a trespasser, or, whether in crossing a track, sufficient care was used to avoid approaching trains. We are not prepared to give our adherence to the

doctrine announced in a very few cases, that a man who steps his foot upon a railroad track, except at a crossing, does so at his peril, though such doctrine when applied to the facts of the particular case may not have been an unjust one. We are rather disposed to say that, where tracks are laid through the streets of a city, upon or substantially upon the level of the street, a person is not limited in crossing such tracks to the regular street crossings, but may cross them at any point between such streets in the convenient performance of his daily duties. We cannot say that there was such danger to an active boy crossing the track at this point as to authorize the case to be taken from the jury upon the ground that he was *ipso facto* a trespasser.

We have no desire to limit or qualify anything said by us in *Railroad Company* v. *Houston*, 95 U. S. 697, or in *Northern Pacific Railroad* v. *Freeman*, 174 U. S. 379, both of which involved the question of care at a regular highway crossing, and we have no doubt that in the case under consideration such care should have been used as the nature of the case required, and the intellectual capacity of the plaintiff admitted. But these were all questions for the jury, and were conclusively answered by the verdict. We cannot say that the court should have taken the case from the jury, or that it erred in any material particular. We cannot even say that we should have come to a different conclusion upon the facts.

The judgment of the Court of Appeals was right, and it is therefore

*Affirmed.*

MR. JUSTICE WHITE and MR. JUSTICE McKENNA dissented.