John Curran, by James A. McCallum and Oliver E. Roberts, Guardians, Appellee, v. Chicago & Western Indiana Railroad Company et al., on appeal of Chicago & Western Indiana Railroad Company et al., Appellants.

## Gen. No. 23,582.

1. MUNICIPAL CORPORATIONS, § 82*—*what constitutes amendment of railroad fence ordinance.* An ordinance which provides for the fencing of railroad tracks in the city, at a time and at places (with reference to the tracks) to be directed by the city council, is to be regarded as an amendment rather than a repeal of a prior ordinance providing that the time and places of fencing shall be directed by the mayor and the commissioner of public works.

2. MUNICIPAL CORPORATIONS, § 82*—*when re-enactments of provisions of ordinance neutralize repeals.* Where an ordinance regulating the fencing of railroad tracks in a city is, though several times repealed, continued in force and in substantially the same form as originally enacted and re-enactments of the ordinance are simultaneous with the provisions for repeal, such re-enactments neutralize the repeals with regard to the provisions carried from the earlier ordinance into the new.

3. RAILROADS, § 532*—*what not condition precedent to liability for injury due to failure to fence track under ordinance.* An ordinance providing that railroad companies operating railroads within the city limits shall, within such time and at such places as may be prescribed by the council, cause walls or fences to be erected, *held* not to make action by the council a condition precedent to liability for an injury arising through a failure to fence the track.

4. RAILROADS, § 532*—*when shown that time and place for fencing designated by city authorities.* In an action against a railroad company to recover for personal injuries alleged to have been caused by defendant's failure to comply with a fencing ordinance, evidence *held* to support a finding that the municipal authorities designated by the ordinance had prescribed the time and place for fencing as provided in the ordinance.

5. RAILROADS, § 532*—*when status of company as to fencing tracks is fixed by municipal authorities.* Where the municipal authorities designated by an ordinance to prescribe the time and

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

place for fencing railroad tracks in the city act thereunder, the status of a railroad company whose fences are so prescribed by them is thereby fixed and is not affected by the fact that the ordinance is subsequently repealed and simultaneously re-enacted in substantially the same terms, except that the new ordinance designates a different municipal authority to prescribe such time and place for fencing.

6. MUNICIPAL CORPORATIONS, § 100*—*when admission of unpleaded fence ordinance not error.* In an action against a railroad company to recover for personal injuries alleged to have been caused by its negligence in failing to comply with a fence ordinance, where it appears that the ordinance, though repealed several times, had been simultaneously re-enacted in practically the same terms, it is not error to receive in evidence the ordinance in force at the time of the injury, though such ordinance was not pleaded, where it is substantially the same as the ordinance which was pleaded.

7. EVIDENCE, § 145*—*when letter press copies admissible.* Letterpress copies of purported communications by the commissioner of public works of a city to a railroad company, directing compliance with a fence ordinance, which are produced from the records of the department of public works by an employee in that department, who testifies that he is custodian of them and to facts showing that they were kept in the discharge of a public duty, are admissible on the question as to whether the railroad company accepted the ordinance.

8. INFANTS, § 1*—*when boy is sui juris.* A boy a little under 15 years of age who is in the seventh grade at school, and as to whose intelligence, capacity and experience there is nothing to show that he is subnormal, is *sui juris.*

9. RAILROADS, § 532*—*when fence ordinance applies to persons sui juris.* An ordinance requiring every person owning, leasing or operating a steam railroad in the limits of the city to fence the tracks in such time and manner and at such places, except at public street crossings, as shall be prescribed by specified municipal authorities, applies to persons *sui juris* as well as to those *non sui juris,* where there is nothing in the language of the ordinance or in the specifications for the fences called for by it indicating that it contemplates only persons *non sui juris.*

10. RAILROADS, § 517*—*what duty owed to trespassers and licensees.* The only duty which a railroad company owes trespassers and licensees on its right of way is not to injure them wantonly or wilfully.

11. RAILROADS, § 586*—*when not error to refuse to direct verdict on ground that plaintiff is a trespasser.* In an action against

Curran v. Chicago & Western Indiana R. Co., 213 Ill. App. 7.

a railroad company to recover for personal injuries through being struck by a train while standing near defendant's track, where the action is based on defendant's negligence in failing to comply with a fence ordinance, it is not error to refuse to direct a verdict for defendant on the theory that plaintiff was a trespasser nor to refuse instructions requested by defendant to the effect that, if plaintiff was a trespasser, he could not recover.

12. NEGLIGENCE, § 198*—*contributory as question of fact or law.* The question of contributory negligence is ordinarily one of fact for the jury, and only when the undisputed evidence shows that the injury resulted from the injured party's negligence can it be held to be a matter of law.

13. NEGLIGENCE, § 201*—*care required of child sui juris as question for jury.* In an action to recover for personal injuries to a child *sui juris*, the standard of care required of the child varies with his age, capacity, experience, etc., and is usually a question for the jury.

14. RAILROADS, § 589*—*when contributory negligence of boy struck by train is question for jury.* In an action to recover for personal injuries to a boy about 15 years of age who was struck, while standing near defendant's track, by an iron bar protruding from a train moving thereon, where it appears that, in using the track as he was, the boy was doing as many others, including adults, were accustomed to do, and that the point in question was on a beaten path extending from the end of a public street and crossing the right of way, there being nothing to indicate where the street ended and the right of way began, and that he stood two feet from the track, the question of his contributory negligence was one of fact for the jury.

15. RAILROADS, § 548*—*what one standing near train not required to anticipate.* One standing 2 feet from a moving train is not bound to anticipate that an iron bar will be permitted to protrude that distance from the train.

16. NEGLIGENCE, § 196*—*when proximate cause is question of fact.* Whether or not a particular act of negligence is the proximate cause of a subsequent injury is a question of fact for the jury.

17. NEGLIGENCE, § 49*—*when proximate cause of accident.* Where the negligence of a defendant causes a condition which continues up to the time of the accident and, operating with other causes, brings it about, it is a proximate cause thereof, if defendant, in the exercise of reasonable care, could have foreseen that some such injury would probably result from his negligence.

18. RAILROADS—*when shown that failure to fence was proxi-*

*See **Illinois** Notes Digest, Vols. **XI** to **XV**, and Cumulative Quarterly, same topic and section number.

Curran v. Chicago & Western Indiana R. Co., 213 Ill. App. 7.

*mate cause of injury.* In an action against a railroad company to recover for personal injuries alleged to have been caused by defendant's failure to comply with a fence ordinance, evidence that plaintiff was injured while standing on defendant's right of way, at a point where it was not fenced, through being struck by a bar of iron protruding from a moving car, is sufficient to support a finding that the failure to fence was the proximate cause of the injury, and that defendant could have foreseen that some such injury would probably occur as a result of its negligence.

19. RAILROADS—*failure to comply with fence ordinance as prima facie negligence.* Failure of a railroad company to comply with an ordinance requiring it to fence its track is prima facie negligence.

20. NEGLIGENCE, § 47*—*number of proximate causes of injury.* There may be more than one proximate cause for an injury.

21. RAILROADS, § 532*—*when liable for injuries due to failure to fence track.* Where, by an ordinance, the fencing of railroad tracks is required and the tracks of two roads run parallel and near each other, one of such roads is not relieved from liability for personal injuries alleged to have been caused by its failure to fence, by reason of the fact that plaintiff, before reaching its track, had crossed the track of the other road, which was also unfenced, as there is an absolute duty on each road to fence its track.

Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1917. Affirmed. Opinion filed December 24, 1918.

C. G. AUSTIN, JR., BEVERLY W. HOWE and LOESCH, SCOFIELD, LOESCH & RICHARDS, for appellants.

FRANCIS X. BUSCH, WILLIAM WALLACE McCALLUM and ELMER M. LIESSMANN, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Appellants, defendants below, appeal from a judgment entered upon the verdict of a jury, in an action on the case for personal injuries. The cause was submitted to the jury upon pleas of not guilty as to the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

first and second counts of the declaration, which charged defendants with negligence in that they failed to build or maintain fences alongside their tracks in the City of Chicago as required by certain ordinances.

The declaration set up an ordinance of March 26, 1890, which purported to fix the speed at which railroads might operate their trains within the city. The third section provided:

"Every person, firm, company or corporation owning, leasing or operating a steam railroad within the corporate limits of the City of Chicago, shall, within such time as may be prescribed by the mayor and commissioner of public works, construct, or cause to be constructed on each side of its tracks, and in such place with reference thereto as the mayor and commissioner of public works shall approve or direct, except where public streets shall intersect or cross the same, substantial walls or fences of such material, design, proportion and height as shall be determined and approved by the mayor and commissioner of public works."

It also set up an ordinance of 1905 by which said ordinance of 1890 was repealed and substantially re-enacted. They differed in that the one of 1890 provided for fencing at a time and at places (with reference to the tracks) to be directed by the mayor and commissioner of public works; that of 1905 at time and places to be directed by the city council. An ordinance of 1911, identical with that of 1905, was admitted in evidence over the objection of defendants, although not pleaded. It was enacted as a part of a general revision of the city ordinances which expressly repealed all ordinances not contained therein.

The admission of these ordinances in evidence is urged as error. It is claimed that the one of 1890 was repealed by that of 1905; that of 1905 by the ordinance of 1911, while that of 1911 was inadmissible because not pleaded. Appellants also argue against the ordinances of 1905 and 1911 that there was no

proof in the record that the city council took any action directing the time or places where fences should be constructed, and this it is claimed was a condition precedent to liability thereunder.

The several ordinances are not inconsistent with each other. The subject-matter thereof is the same. Neither appears to be a substitute for any other so as to operate as a repeal of it in the absence of an express provision therefor, as was the case in *State Public Utilities Commission v. Cleveland, C., C. & St. L. Ry. Co.*, 283 Ill. 374, which is cited by appellants. We think the change from mayor and commissioner of public works to the council itself as the agency to supervise the time and places of construction must be regarded in the nature of an amendment to the original ordinance. The record shows that since its first enactment in 1890, the ordinance in question has been continually in force and substantially in the same form in which it first existed. In each instance the re-enactment of the ordinance was simultaneous with the enactment of the provision for its repeal. "Where a statute is expressly repealed but a portion or all of it is re-enacted in the repealing statute, the re-enactment neutralizes the repeal so far as the provisions of the old law obtain in the new one, and as to the portions unchanged in form or substance the repealing act is a mere continuation of the original act." *People v. Cairo, V. & C. Ry. Co.*, 265 Ill. 637; *Merlo v. Johnston City & B. M. Coal & Mining Co.*, 258 Ill. 332; *White Sewing Machine Co. v. Harris*, 252 Ill. 366; *Bear Lake & R. Waterworks & Irrigation Co. v. Garland*, 164 U. S. 11.

As to the objection that action by the council was a condition precedent to liability under the ordinances of 1905 and 1911, we do not think it was, but at any rate there is proof in the record as to all defendants from which, we think, the jury were justified in finding that the mayor and commissioner of public works,

shortly after the original enactment thereof, March 26, 1890, prescribed the time and manner within which defendants should comply with the ordinance, and that defendants accepted the same.

We are further of the opinion that the status of the defendants under said ordinance was thereby fixed and that the status was not changed by the subsequent repeal and simultaneous re-enactment of the ordinance. At that time inchoate statutory rights had accrued under the ordinance as it was originally passed, and these rights were not to be defeated by the subsequent amendatory ordinance. *State v. Kates,* 149 Ind. 46, 48. When the status was fixed by the acceptance of the ordinance, an inchoate right arose in favor of all those who might be injured by failure of the defendants to comply with its provisions. There is nothing in the ordinance of 1905 to indicate an intention on the part of the council to change any duty which had been fixed under the prior ordinance.

We think the language used in *Re Prime's, Estate,* 136 N. Y. 355, is appropriate here:

"Where the amended act re-enacts provisions in the former law, either *ipsissimis verbis* or by the use of equivalent, though different words, the law will be regarded as having been continuous, and the new enactment as to such parts will not operate as a repeal so as to affect a duty accrued under the prior law, although as to all new transactions the later law will be referred to as the ground of obligation."

We think, too, the court did not err in receiving in evidence the ordinance of 1911, although it was not pleaded, it being substantially the same as the pleaded ordinance. *Hamilton v. Titus,* 185 Fed. 142; *Knoup v. Piqua Branch of State Bank of Ohio,* 1 Ohio St. 607.

The Western Indiana Company contends that the evidence as to its acceptance of the ordinance is insufficient, and in this connection urges that the court erroneously admitted certain records kept in the office

of the commissioner of public works of the City of Chicago. These records were letter-press copies of purported communications to defendants directing compliance with the ordinance. They were produced by an employee in that department of the city who testified that he was the custodian of them, and also to facts showing that the same were kept in the discharge of a public duty. While the weight of this evidence was for the jury, we think under the rule laid down in *Village of Evanston v. Gunn*, 99 U. S. 666, and *Wheeler v. Sanitary District*, 270 Ill. 470, it was admissible, and, taken in connection with other evidence, was sufficient to prove prima facie acceptance of the ordinance. No evidence to the contrary was offered.

There is little contradiction as to circumstances under which the accident in question happened. It occurred April 15, 1915, about 7:40 a. m. Appellee was then 14 years and 10 months of age. He lived at 9721 Houston avenue, a public street in the City of Chicago, extending north and south. This street was intersected by 97th street, which extended east and west. As 97th street approached the tracks of the defendant companies, it stopped a few hundred feet west of them. One block east of 97th street was Baltimore avenue, which extended north and south and at which 97th street ended. Walking east on 97th street one would first reach the two tracks of the Pennsylvania Company, and further east of these the three tracks of the Western Indiana Company. There was a space of about 6 feet between their tracks, which at this place paralleled each other, running in a general northerly and southerly direction. Beyond the tracks farther to the east was a chicken farm to which plaintiff was going on an errand for his mother. While 97th street was never extended eastward across the railroad tracks by public authority, it appears that for a period of 30 years the public had crossed

the tracks in the line of 97th street so much as to make a beaten path, and there was nothing to indicate where the public street ended and the private right of way of the railroad companies began.

The plaintiff had lived at his then home for 2 years. He was familiar with the neightborhood and the location of the tracks. He had been accustomed to cross the railroad tracks at his pleasure. On this particular occasion as he walked towards Baltimore avenue he saw a freight train on the first or most westerly track of the Chicago & Western Indiana Company. The train was moving towards the south. He walked eastward towards it on the line of 97th street and crossed over both tracks of the Pittsburgh, Fort Wayne & Chicago Railway Company. He stood between the Pittsburgh, Fort Wayne & Chicago Railway Company's tracks a little more than 2 feet from the moving train, waiting for it to pass. As he did so he faced south in the direction the train was moving. While thus standing he was struck on the back of the head by some instrument projecting from one of the moving cars and thrown forward. His left arm was cut by the car wheels of the moving train which passed over him. He jumped up and ran home; was taken to the hospital and his left arm was amputated within a short distance from his shoulder. When about 8 years of age he had lost his right arm in a street car accident under circumstances which the record does not disclose. He was in the seventh grade at school and there is nothing in the record to indicate that in intelligence, capacity, experience, etc., he was other than the normal boy of his age.

We think, as appellants contend, that he was *sui juris* within the meaning of that term as used by the courts. It is conceded that the ordinance is intended to protect human beings as well as dumb animals under the rule laid down in *Heiting v. Chicago, R. I. & P. Ry. Co.*, 252 Ill. 466, but appellants contend that its appli-

cation is limited to human beings who are *non sui juris* and that the plaintiff, therefore, cannot maintain his suit. There is nothing in the language of the ordinance itself to indicate such limitation. The specifications for the prescribed fences do not indicate that the construction contended for was in contemplation. These were to be "in no case less than 7 feet high from the surface of the ground." Such fences seem well fitted to protect adults as well, or even better, than younger persons, and at any rate would serve the purposes of notice and warning to everybody.

The ordinance in question has been construed by our Supreme and Appellate Courts in *Heiting v. Chicago, R. I. & P. Ry. Co., supra,* and 162 Ill. App. 403. These cases are cited by both appellants and appellee. The plaintiff who there sued was a boy over 10 years of age. There is nothing in the opinion of either court to indicate whether he was considered *sui juris* or *non sui juris.* Neither is there language in the opinion of either court which would limit the application of the ordinance in the way appellants contend. The Supreme Court there said:

"The age of the child injured is, of course, one of the circumstances to be considered by the jury in determining the question of proximate cause."

The authority relied on in the *Heiting* case, *supra,* was *Baltimore & P. R. Co. v. Cumberland,* 176 U. S. 232, and that was a case in which the plaintiff was apparently considered by the reviewing court to be *non sui juris,* although the case below was tried upon the theory that he was *sui juris.* 12 App. Cas. (D. C.) 598.

While most of the cases arising under such ordinances are brought by persons who have not yet reached the age of responsibility, we have found no decision in which the courts have held that the protection of similar ordinances and statutes is limited to such persons. On the contrary, in the case of *Union*

Curran v. Chicago & Western Indiana R. Co., 213 Ill. App. 7.

*Pac. Ry. Co. v. McDonald,* 152 U. S. 262, which was a suit upon a statute requiring the fencing of privately owned slack pits (the suit being brought by a boy of 12 years of age who was ordinarily intelligent and therefore *sui juris*), the plaintiff was held to be within the protection of the statute. The contention of appellants on this point is not sustained.

It is further the contention of appellants that plaintiff cannot recover because he was on their right of way as a trespasser or licensee, and in either case the only duty which the defendant companies owed to him was that they should not wantonly or wilfully injure him. That such is the general rule of law there can be no question. *McGuire v. Chicago & E. I. R. Co.,* 120 Ill. App. 111; *Wabash R. Co. v. Jones,* 163 Ill. 167; *Illinois Cent. R. Co. v. Eicher,* 202 Ill. 560.

Appellee admits the general rule, but contends that under the facts here the plaintiff was not a trespasser, relying on *Heiting v. Chicago, R. I. & P. Ry. Co., supra.* In that case the court apparently followed the authority of *Baltimore & P. R. Co. v. Cumberland, supra.* It is claimed, however, that the last-named case is distinguishable from the *Heiting* case, *supra,* as well as the instant one, in that the track crossed by plaintiff at the time of his injury was laid in a public street over which the plaintiff had a right to pass and in which he would, therefore, not be a trespasser. The point seems well taken. Appellee contends, however, that the general rule does not apply where the plaintiff sues, as here, on an ordinance passed for the protection of persons, for the reason that the practical effect of so holding would be to nullify the ordinance. The principle contended for has, we think, been recognized by our Supreme Court in cases analogous to the instant case. In *Streeter v. Western Wheeled Scraper Co.,* 254 Ill. 244 [1 N. C. C. A. 828], the plaintiff sued on a statute which required the employer to guard dangerous machinery, and it would

seem that under the evidence the common-law defense
of assumed risk would apply. It was held, however,
that the application of the rule would, in effect, nul-
lify the statute and it, therefore, would not be applied.
The court said: "If the employee must assume the
risk of the employer's violation of the statute, the act
is a delusion so far as the protection of the former is
concerned." In *Union Pac. Ry. Co. v. McDonald, su-
pra,* the defendant was held liable, although the plain-
tiff was admittedly a technical trespasser, the court
holding that the usual trespasser rule could not be
applied. It is clear that the application of the gen-
eral trespasser rule would render the ordinance here
sued on a practical nullity and entirely defeat its pur-
pose. In view of the authorities above cited, and the
holding of the Supreme Court in the *Heiting* case,
*supra,* we think the contention of appellants cannot
be sustained, and that not only was there no error in
the action of the trial court in refusing to direct a
verdict for defendant on the theory plaintiff was a
trespasser, but also that the trial court properly re-
fused to give instructions asked for by the defendant
to the effect that, if plaintiff was a trespasser, he
could not recover.

Appellant, Chicago & Western Indiana Railroad
Company, argues that the evidence failed to show that
plaintiff was in the exercise of due care at the time
he was injured, and asks us to hold as a matter of
law, or, if we may not do this, that we shall find as a
fact that the plaintiff was guilty of contributory neg-
ligence which bars his recovery. The question of con-
tributory negligence even as to adults is ordinarily
one of fact for the jury, and only when the undisputed
evidence shows that the injury resulted from negli-
gence of the injured party can it be held to be a mat-
ter of law. *Chicago & J. Elec. Ry. Co. v. Wanic,* 230
Ill. 530. As to a child *sui juris,* the standard of care
varies with the age, capacity and experience, etc., and

it is usually, if not always, a question for the jury. *Siegel, Cooper & Co. v. Trcka,* 218 Ill. 559. In travel-ing the beaten path in which plaintiff walked just prior to his injury, he seems to have been doing the same thing as many others, even adults, were accus-tomed to do. There was nothing to indicate to him just where the public way ended and the private right of way began. He stood a little more than 2 feet from the moving train. On this point the ultimate question is, was it under all the circumstances contributory neg-ligence in law or fact for a youth of plaintiff's age, discretion and experience to so stand. We do not think plaintiff was bound to anticipate that an iron bar would be permitted to protrude from the moving car. There was no proof the railroad company itself was negligent in this respect. It was, however, an unusual circumstance. He was not bound to antici-pate that another would be negligent, or that the ex-traordinary and unusual would occur. *St. Louis S. W. Ry. Co. of Texas v. Wilcox,* 57 Tex. Civ. App. 3; *Lake Shore & M. S. Ry. Co. v. Enright,* 227 Ill. 409; *Henry v. Cleveland, C., C. & St. L. Ry. Co.,* 236 Ill. 219; *New York, C. & St. L. Ry. Co. v. Mushrush,* 11 Ind. App. 192. Under all the circumstances which appear in evidence, the question of due care on the part of the plaintiff must be considered as settled by the verdict of the jury.

Appellants next contend that the negligence proved was not the proximate cause of plaintiff's injury. Their argument is that conceding the failure to fence was negligence, this negligence did nothing more than furnish a condition by which the injury was made possible; that the injury to plaintiff came about as a direct and immediate consequence of his being struck by an iron bar projecting from the side of a belt-line freight train over which defendants had no control; that but for this the accident would not have occurred; that there is no causal connection between the neglect

to fence and the blow which struck plaintiff; that the blow from the projecting iron was a subsequent intervening and independent act of a third person which directly caused the injury, and that the law will, therefore, refer the damage to the last or proximate cause and refuse to refer it to the more remote one. In support of their contentions, appellants cite *Seith v. Commonwealth Elec. Co.*, 241 Ill. 252; Cooley on Torts (3rd Ed.), 99; *Hartnett v. Boston Store of Chicago*, 185 Ill. App. 332, and many similar cases, including the *Heiting* cases, *supra*, which they urge sustain their contention.

In the *Heiting* case the Supreme Court said:

"If it can reasonably be concluded from the evidence that the accident would not probably have happened except for the failure of the appellant to fence its track, then it follows that the neglect to fence was the proximate cause of the accident, unless some other disconnected, efficient cause which could not have been foreseen by the exercise of ordinary care has intervened."

In this connection it quotes with approval the language of the Supreme Court in *Hayes v. Michigan Cent. R. Co.*, 111 U. S. 228:

"It is further argued that the direction of the court below was right, because the want of a fence could not reasonably be alleged as the cause of the injury. In the sense of an efficient cause, *causa causans*, this is no doubt strictly true, but that is not the sense in which the law uses the term in this connection. The question is was it *causa sine qua non*,—a cause which, it it had not existed, the injury would not have taken place, an occasional cause, and that is a question of fact, unless the causal connection is evidently not proximate."

It must be remembered that whether or not a particular negligence is the proximate cause of a subsequent injury, it is a question of fact for the jury. As said in *Illinois Cent. R. Co. v. Siler*, 229 Ill. 390:

"What is the proximate cause of an injury is ordi-

narily a question of fact, to be determined by the jury from a consideration of all the attending circumstances. *Fent v. Toledo, P. & W. Ry. Co.,* 59 Ill. 349; *Pullman Palace Car Co. v. Laack,* 143 Ill. 242; *West Chicago St. R. Co. v. Feldstein,* 169 Ill. 139. It can only arise as a question of law or pleading when the facts are not only undisputed, but are also such that there can be no difference, in the judgment of reasonable men, as to the inferences to be drawn from them.''

We think the *Heiting* case, *supra,* must be considered as conclusive against the contention of appellants unless it can be said that the fact that after plaintiff went upon defendant's right of way he was struck by the projecting iron, was an ''other disconnected, efficient cause which could not have been foreseen by the exercise of ordinary care'' which intervened. In that alone, if at all, is this case distinguishable on this point from the *Heiting* case. It was argued there that plaintiff's selection of the ends of the railroad ties near the moving train as a place to run on was such an intervening cause, but the court held otherwise. Here the instrument projecting from the car was without doubt an efficient cause of plaintiff's injury. It was not, however, disconnected from the negligent violation of the ordinances by defendants. On the contrary, the condition caused by said negligence continued up to the time the bar struck plaintiff, and operating in conjunction with it was a proximate cause of the resulting injury. Where negligence of a defendant causes a condition which continues up to the time of the accident and operating with other causes brings it about, it is a proximate cause thereof if the defendant in the exercise of reasonable care could have foreseen that some such injury would probably result from his negligence.

In *Siegel, Cooper & Co. v. Trcka, supra,* plaintiff alleged the negligent construction of a passenger elevator in a department store whereby he was injured. It appeared that the injury occurred as the direct

22    APPELLATE COURTS OF ILLINOIS.

Curran v. Chicago & Western Indiana R. Co., 213 Ill. App. 7.

result of his being thrown in a playful scuffle by a fellow employee. The court said:

"It is first contended that appellant is not liable in this action because the proximate cause of the injury was the negligent act of the boy who threw appellee upon the floor of the elevator. If, however, appellant was guilty of the negligence charged in the declaration and without which the injury in question would not have occurred, then it would make no difference, as to its liability, that some act or agency of some other person or thing also contributed to bring about the result for which damages are claimed. Both or either of the contributing agencies were liable for the injury occasioned by their negligence, appellee being without fault and not held to have assumed the risk involved in the improper construction."

In *Waschow v. Kelly Coal Co.*, 245 Ill. 516, the Supreme Court says:

"When an injury proceeds from two causes operating together, the party putting in motion one of them is liable the same as though it was the sole cause. (Bishop on Non-Contract Law, secs. 39, 450.) The negligent act or omission must be one of the essential causes producing the injury but need not be the sole cause nor the last or nearest cause."

In *Pullman Palace Car Co. v. Laack,* 143 Ill. 242, the court expressed the opinion that:

"It is well settled that where the injury is the result of the negligence of the defendant and that of a third person; or of the defendant, and an inevitable accident; or an inanimate thing has contributed with the negligence of the defendant to cause the injury, the plaintiff may recover, if the negligence of the defendant was an efficient cause of the injury."

In *Elgin, A. & S. Traction Co. v. Wilson,* 217 Ill. 47, the failure to lock a switch by an employee of the railroad company was set up as negligence against him. This was proved, but it also appeared that the collision of the trains which occurred was directly caused by some mischievous boys who threw the

switch. The railroad company was nevertheless held liable.

In *American Exp. Co. v. Risley*, 179 Ill. 295, the Supreme Court said with reference to the injury there sued for:

"It would seem clear, however, that the injury was caused by the concurrence of three facts, the first being the chute placed in the manner shown; second, the coal car on the sidetrack; and third, the movement of the train. Certain it is, the careless handling and placing of the chute caused a condition which continued up to the time of the accident and contributed thereto. That other causes co-operated does not absolve the defendant for its careless or negligent act."

See also *Annen v. W. F. McLaughlin & Co.*, 189 Ill. App. 261; *Illinois Cent. R. Co. v. Siler*, 229 Ill. 390; *Commonwealth Elec. Co. v. Rose*, 214 Ill. 545. We think the jury could reasonably find that the neglect to fence was the cause of plaintiff's injury, and that defendants could have foreseen some such injury would probably occur as a result of the negligence proved. The violation of the ordinance was prima facie negligence.

In this connection appellant, Chicago & Western Indiana Railroad Company, has urged as error the refusal of the court to give at its request instructions numbers 24 and 31 which in effect asked the court to instruct the jury that if they found the proximate cause of the injury was the failure of the other defendants to erect and maintain a fence on the west side of their tracks, there could be no recovery against the Chicago & Western Indiana Railroad Company. These instructions were evidently offered upon the theory that as plaintiff walked from the west towards the east he would first reach the tracks of the Pennsylvania lines, and that the cause of his injury was the absence of the fence west of the Pennsylvania tracks, and that if this was the first and proximate cause of

the subsequent injury, there could be no liability on the part of the Western Indiana for its failure to fence. These instructions proceed on the theory that there can be only one proximate cause for an injury. Within the meaning of the law this is not true. There may be several such causes. *Waschow v. Kelly Coal Co., supra.* It has been held in this and other States that where by statute the fencing of railroad tracks is required, and the tracks of two or more companies run parallel and close together, the duty is absolute as to each or all of such companies to fence their respective tracks. *Illinois Cent. R. Co. v. Davidson,* 225 Ill. 618; *Shepard v. Buffalo, N. Y. & E. R. Co.,* 35 N. Y. 641; *Gillam v. Sioux City & St. P. Ry. Co.,* 26 Minn. 268. This seems to be true even though the tracks of the respective companies are so close that the erection of fences by each might be unnecessary, impractical or even dangerous. *Kelver v. New York, C. & St. L. R. Co.,* 126 N. Y. 365, 27 N. E. 553.

What we have already said disposes of the objections of appellants to the rulings of the court upon giving and refusing instructions. The case was properly submitted to the jury under instructions which fully and accurately stated the law applicable to the case, and while the verdict is high, we do not regard it as excessive to an extent which would indicate passion or prejudice on the part of the jury.

The judgment will therefore be affirmed.

*Affirmed.*