### YOUNG v. N. P. SEVERIN CO. et al.
### No. 7596.

Circuit Court of Appeals, Ninth Circuit.
Nov. 15, 1935.

J. A. Hellenthal, of Juneau, Alaska, for appellant.

H. L. Faulkner, of Juneau, Alaska, and George M. Naus, of San Francisco, Cal., for appellees.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

WILBUR, Circuit Judge.

This is an action for damages for personal injuries to a child nine (nearly ten) years of age at the time of an accident. She tripped over an iron bar lying in a street and broke her arm. The defendants are copartners engaged in the erection of

public buildings, and at the time of the accident were engaged in constructing a reinforced concrete building for the federal government in the city of Juneau, Alaska.

Appellant alleges that the sidewalks on this block of Fifth street were so completely blocked that pedestrians were compelled to walk in the street; that the street was covered with building material to such an extent as to make it dangerous for pedestrians to pass over it; that the street was not fenced off but was left open to travel; that the defendants placed no warning signs and did nothing to warn the public of the dangerous condition of the street; that the plaintiff had occasion to pass over this section of Fifth street, and while in the exercise of due care not knowing the dangerous condition of the street, "she tripped on a piece of iron left on the street by the defendant and fell to the ground," and broke both bones in the left forearm, leaving the arm crooked and unsightly and impaired in point of usefulness as the result of the accident; it is also alleged that the arm caused much pain and will continue to do so at intervals as long as appellant lives, and, further, that the plaintiff was endowed by nature with musical talent, and that the condition of her arm will interfere with the employment and development of that talent, and that her earning capacity and usefulness in other fields of endeavor has also been impaired. Appellant asks $15,000 damages.

The trial was before a jury. On motion of defendants, the court directed a verdict for the defendants. The only question on appeal is whether or not the evidence required the presentation of the case to the jury on the question of the negligence of the plaintiff or of the defendants.

As the building covered an entire city block, it was necessary for the defendants to use the surrounding streets to store their building materials, and they applied to and received from the city council of Juneau permission to use one-half of Main, Fourth, and Seward streets, and all of Fifth street, extending from Main to Seward, for that purpose. We think this is the effect of the resolution of the city council which directed the street commissioner or the city manager to grant the request of appellees. The

building site was sloping ground with a steep grade from Fifth to Fourth streets on Seward on one side and on Main street on the other. Most of the building material was brought into the lot from Fifth street. Along this block on Fifth street building material was piled on both sides of the street covering both sidewalks, but a passageway over the street was always kept open for the convenience of appellees' trucks. This passageway was also used by other cars and by pedestrians, as they could not use the sidewalks.

The only testimony as to how the accident occurred was that of the appellant. She had been taking a music lesson on the day of the accident, and, in company with two other little girls, was on her way to the home of one of them. They walked along Fifth street between Main and Seward. The other girls were walking ahead of appellant. When she attempted to step over an iron bar in the street she caught the toe of her shoe on the bar and fell, breaking both bones in the lower part of her left arm. We quote her testimony as follows: "I was walking slowly. The reason I was walking slowly was that I was trying to pick my way; to pick my way through the places where the iron was. In this place where the cars went, I could see where the wheel tracks were. The street was muddy. There was some space between the space where the wheel tracks went and the space where most of the iron was piled. That space was wide enough to walk on. It was not all dry. It was a little wet. It was not as wet as the middle of the road. I walked along the path. That is the little space that lay between where the wheels of the cars went and where the iron was, along the edge of the iron and right along the edge of the open space where the cars went. As I walked along there I found iron in my way. Not as much as there was the other way, but less. I could pick my way through that all right. I walked carefully, very carefully. As I reached about the middle of the block, between Main and Seward, I tripped and fell. I tripped over some iron. I was stepping over the iron and my toe caught in it. I saw the iron in front of me and tried to step over it and my toe caught in it. The piece of iron was half of a square and hollowed out inside. The piece of iron I tripped over

seemed to be short but it might have been longer because it was an end coming out of the pile. It seemed just long enough to cross the path where I was walking and it was sticking across there from the piles of iron."

The piles of steel referred to were reinforcing steel for use in the building.

On cross-examination and redirect, appellant testified as follows: "I remember when I was here last March going up to the Court House one night and testifying in Mr. Newman's office, when Mr. Hellenthal was there; the iron that I fell on may have been four feet long, I must have said that it was. I did not say at that time that that was a piece of steel about four feet long that was lying all by itself in the street. I guess you asked me, 'How did you happen to fall' and I remember saying, 'started to step over a piece of iron or steel, and my toe caught on a piece of it. I didn't step far enough and I· fell.' When I was asked, 'Where was the piece of steel?' I answered, 'About in the middle.' I remember that. I remember the question 'Was it one piece out there alone or was it a pile of steel'? I answered, 'This one I fell on was one piece.' I was asked, 'Out there all alone?' and I said 'Yes.' When I was asked later, 'Just one piece out there all alone?' I guess I said 'And there was another piece right ahead of it.' I do not remember now that I said it. And when I was asked, 'Just a short piece?' I answered, 'No, the same length.' I remember being asked this question, 'Was this piece of iron you fell over lying in a pile or lying by itself?' and I answered, 'Lying by itself.'"

Redirect examination: "It was lying by itself. It was not in a heap of steel. It was across the path and I tried to step over it."

Appellees had a right to use the street for the reasonable storage of supplies being used in the construction of the building, and for that purpose they had the right to close the street. They did not entirely close the street, but left a passageway for their own convenience in the delivery of material upon the ground. There was nothing to prevent the public using this passageway. It was used by pedestrians who had occasion to pass in that vicinity, but the method in which the street was being used and the na-

ture of the obstructions to its use were perfectly apparent to any passerby. There was no necessity for warning signs because the way in which the street was being used indicated the danger which would be encountered by the public in using that portion of the street which was not obstructed by building material.

Appellees contend that the evidence does not show that they or their agents placed in the street the piece of iron over which appellant stumbled. The evidence on that subject was circumstantial but sufficient to require the issue to be submitted to the jury.

The question of appellee's negligence thus narrows itself to a consideration of its duty with reference to the passageway between the piles of building material on either side thereof. The applicable rule is thus stated by appellee: "* * * in submitting the streets to such use, whether by express permission of the City Council or otherwise, defendants are bound to use due care in such use."

The rule relating to the right to use the street for the purpose of storing building materials is stated in volume 13 of Ruling Case Law, as follows:

"* * * And abutting owners have a right to use a portion of the street or highway, in a reasonable manner and for a temporary period, for certain special purposes, such as the·loading or unloading of merchandise, or as a place for depositing building material while making improvements on their land." Section 179.

"The obstruction, therefore, must be temporary in point of time * * * and it must be reasonable as to character. And questions of fact are presented by issues as to the temporary character of the obstruction, and the reasonableness of the obstruction in point of character. That is, broadly speaking, the necessity of the obstruction is a question of fact, depending on the circumstances of each particular case." Section 181.

This right must be exercised "with due regard to the safety of the public, and so as not to interfere unreasonably with their use of the street or walk or with the reasonable use and enjoyment of the adjacent property. It should also be exercised in such a way as to discommode others as little as is reasonably practicable." Section 182.

"Subject to the limitations of necessity, reasonableness, and the public right, an abutting owner has the right temporarily to deposit in the street in front of his premises building materials required in the improvement of his property, even though the public using the street may to some extent be incommoded thereby. * * * While no license from the municipal authorities is necessary to legalize such obstructions, and the right exists even in the absence of an ordinance expressly authorizing its exercise, such an ordinance is valid, and affords full protection both to the city and the abutting owner, though it will not relieve them from the duty of properly guarding such obstructions." Section 185.

■ In view of the fact that the defendants did not exclude the public from Fifth street between Main and Seward and permitted the use of the unobstructed portion thereof by the public, including small children going to and from school, it was a question for the jury to determine whether or not the defendants, in the exercise of their right to use the street jointly with the children and other pedestrians who traversed the same, exercised due care for the protection of such children.

### Contributory Negligence.

■ Ordinarily the question of whether or not a child of tender years is guilty of negligence is a question of fact for determination of the jury and not one of law for the court. In the case at bar, the testimony of the appellant is that she saw the piece of iron lying in the street and attempted to avoid it by stepping over it, but did not succeed. If she had been an adult, unquestionably this would have been held to have been negligence on her part, but being a child of tender years, the question was for the jury. See Baltimore & P. R. Co. v. Cumberland, 176 U. S. 232, 20 S. Ct. 380, 44 L. Ed. 447; Southern Pacific Co. v. Kauffman (C. C. A.) 50 F.(2d) 159.

■ The appellees have moved to strike out the bill of exceptions on the ground that it was settled too late. This question turns upon the peculiar situation shown by the record, namely, that although the case was tried and the verdict rendered on November 18, 1931, the judgment on the verdict was not rendered or entered until July 7, 1934. The judgment granted ninety days within which to prepare the bill of exceptions. Appellees contend that the bill of exceptions must be allowed in the same term at which the trial was had, and, in effect, that the trial terminated at the time the verdict was rendered. For the purpose of settling a bill of exceptions, the trial of the case cannot be said to be completed until the judgment is rendered. The bill of exceptions was settled in time.

Judgment reversed.